J. W. WILLIAMS v. CHARLES F. DUNN & SONS COMPANY.

(Filed 8 October, 1913.)

1. Execution Sale—Motions in the Cause—Title of Cause.

　　Where a motion is made in the cause to set aside a sheriff's sale under execution issued by one to whom the judgment has been assigned, the title of the cause remains as it was originally,

WILLIAMS *v.* DUNN.

and it should not be entitled in the name of the movant as plaintiff and the name of the purchaser at the sale as defendant.

## 2. Execution Sales—Advertisement—Declaratory Statutes.

The requirements of Revisal, secs. 641, 642, that a sheriff advertise a sale under execution and serve a copy upon the defendant ten days before the sale, are directory, and when not followed, it will not render the sale void as against a stranger without notice of the irregularity.

## 3. Execution Sales—Motions to Set Aside—Collateral Attack.

The procedure to set aside a sale of lands under an execution which has not been advertised, and where notice has not been given the defendant, in compliance with Revisal, secs. 641, 642, is, as against a purchaser with notice of the irregularity, by motion in the cause, for the sale cannot be collaterally attacked.

## 4. Execution Sales—Bidding Repressed—Motions to Set Aside Sale—Fraud—Evidence.

Where the assignee of a judgment causes an execution to issue for a sale of lands, and it appears that the advertisement thereof has not been made as directed by the statute; that there were no opposing bidders present at the sale, and the assignee of the judgment bid it in at a small sum, about one-eighth of its real value—in this case, $800 to $1,000—and the judgment debt was less than $45, the sale will not be permitted to stand unless the strict rights of the purchaser require that it be sustained.

## 5. Execution Sale—Duty of Sheriff—Sale En Masse—Fraud—Principal and Agent.

The sheriff, as an officer of the court in the sale of lands under an execution issued on a judgment, acts in some respects as the agent both of the judgment debtor and creditor, and should exercise a fair discretion to make the judgment debt and costs, without unnecessary sacrifice of the lands; and while it has not been held with us that the sale of three separate tracts of land as a whole, when one would have been enough to satisfy the execution, is of itself sufficient to invalidate the sale, yet it is so, in direct proceedings, when it further appears that the tracts thus disposed of could have been sold separately without prejudice to the rights of the parties, and there were circumstances of fraud, oppression, or unfairness, to the debtor's disadvantage in the sale.

## 6. Same—Evidence—Void Sale.

Upon motion made in the cause by a judgment debtor to set aside a sale of his lands made by the sheriff under execution, it

appeared that the land brought a grossly inadequate price; that the purchaser, having superior knowledge of the value of the land, misled the attorney of the judgment debtor, who did not have sufficient time to inform himself in regard thereto; that there was no competition at the sale, by reason of the purchaser's conduct and the failure to properly advertise it; that the debtor had sufficient personal property out of which the execution could have been satisfied; that the purchaser refused at the sale to accept the amount of the judgment and cost, or the price he had bid for the land; that the purchaser was notified of the irregularities of advertisement, etc., at the time of the sale; that the land consisted of three separate tracts, any one of which would have satisfied the judgment and costs, and were sold as a whole: *Held*, the sale thus made *en masse*, with the attendant circumstances of fraud and irregularity, rendered it void as to the judgment debtor.

APPEAL by defendants from *Justice, J.,* at June Term, 1913, of LENOIR.

This was a motion before the clerk, in the case of *Williams v. Williams,* to set aside a sale of land made under an execution. The motion was based upon affidavits filed, and the sale was set aside by .him. Plaintiff appealed to the Superior Court, where the action was dismissed, this Court reversing the decision. At the August Term, 1912, of that court, the judgment of the clerk was affirmed, and an order of reference was made for an accounting between the parties. The report of the referee was confirmed at the June Term, 1913, all of which will appear more fully hereafter.

The case was before us at Spring Term, 1912, upon a question of jurisdiction, and is reported in 158 N. C., 399. We then reversed the judgment below dismissing the proceeding, and remanded it for further hearing. Jesse E. Williams filed a lengthy affidavit, upon which he based his motion in the cause to set aside the sale under the execution issued therein. The material allegations of this affidavit, which describes in detail the transaction from its inception to the time of the motion, was denied by the defendant, but *Judge Carter* affirmed the judgment of the clerk of the Superior Court, before whom the motion to set aside the execution was originally made, and in that judg-

ment the clerk finds the facts to be as set forth in the affidavit of the plaintiff, John W. Williams, and those facts are substantially as follows: On 10 February, 1909, Jesse E. Williams, one of the defendants, recovered a judgment against John Williams before a justice of the peace, which was docketed in the Superior Court of Lenoir County. On 21 October, 1910, Jesse E. Williams transferred and assigned this judgment to Charles F. Dunn, cashier of Charles F. Dunn & Son Company. Charles F. Dunn & Son Company is a banking concern and a partnership. On 8 February, 1911, the clerk of the Superior Court issued an execution on the judgment returnable to the March Term of the Superior Court of Lenoir County, which convened on 13 March, the return day of said execution being less than forty days from the date of its issue. On 14 March the sheriff proceeded to sell the land upon which he had levied, and Charles F. Dunn, representing himself as cashier of Dunn, Son & Company, purchased the property for the sum of $125. The property consisted of three separate lots, each of which, with its improvements, was worth more than $300 each. The sheriff sold all three of the lots together. Prior to the sale, the plaintiff, through his attorneys, protested against the sale, same being made upon the ground that the execution was irregular, and upon the further ground that the sale thereunder was irregular. The plaintiff at the time had sufficient personal property out of which the execution could have been satisfied. The plaintiff was a resident of Philadelphia and was not present at the sale, and the defendant, taking advantage of his absence, represented to the plaintiff's attorney, who was unfamiliar with the property or its value, and just before the sale, that it was not worth more than $150. Charles F. Dunn, acting for defendants as their duly authorized agent, made his statement to the attorney of plaintiff for the purpose of misleading him and with the intent to prevent fair competition at the sale under the execution, so that the property could be bought by him at an undervalue "or at a figure greatly less than its value," he well knowing that the attorney was acting in ignorance of the real

163—14

value of the property and had not time for investigation, and this was done with the purpose of defrauding the debtor, by preventing a fair sale of the property. The sale of the land was not advertised according to law. Jesse E. Williams and Charles F. Dunn, as assignee of the Williams judgment, had agreed that no execution should issue on the judgment, and this agreement was a part of the consideration for the assignment by Jesse E. Williams to Charles F. Dunn, who was in fact the assignee of the judgment in his individual capacity, and not as cashier of the alleged bank. Charles F. Dunn, who was the only bidder, bought the property for the sum of $125. The purchase price was applied to the Williams judgment (and another judgment against the plaintiff, which had been assigned to Charles F. Dunn) and the cost of the execution sale, and the balance was paid into court. There were no other bidders present at the sale except the defendant Dunn. Execution under which the sheriff attempted to sell was for the sum of $35.12, with interest from 10 February, 1909, and $1.45 cost. The sheriff levied upon and sold all three of the lots at one time, they being worth about $1,000. On 2 September, 1911, the plaintiff, after due notice, moved to set aside the sale upon the grounds set forth in the affidavit filed. Prior to the making of the motion, the plaintiff tendered to the defendant the amount bid at the sale and interest, which was more than sufficient to satisfy the judgment with interest and costs, which had been assigned to the defendant. The clerk found the facts set forth in the affidavit of the plaintiff to be true, and adopted them as his findings, and set aside the execution sale. The judgment of the clerk was affirmed by *Judge Carter* at the August Term, 1912, and a reference ordered to take an account between the parties. The defendant Dunn was in possession of the property from 15 April, 1911, to 1 September, 1912. The rental value of the lots, as alleged by the plaintiff and admitted by the defendant, was $3 per week. The referee, Mr. J. G. Dawson, after allowing the defendant the amount due under the two judgments of Jesse Williams against John W. Williams, and the other judgment against him, which had been assigned to the defendant

Dunn, with interest and cost, the balance of the purchase money paid by him and the taxes, found that there was due to plaintiff from the defendant the sum of $121.03, with interest from 21 September, 1912, and that the plaintiff was entitled to have all of said judgments canceled. The findings of the referee, both as to law and facts, were approved by *Judge Justice* at the June Term, 1913, and final judgment entered, from which this appeal was taken by the defendant.

*Rouse & Land for plaintiffs.*
*Charles F. Dunn in propria persona.*

WALKER, J. This is a motion to set aside an execution sale, and the title of the original action should have been retained, instead of making the motioner plaintiff and the purchaser at the sale a defendant. It is not a new proceeding, but a motion in the cause, as at first constituted, for the desired relief. The title on the docket here and below should be *Williams v. Williams,* motion by defendant, and not *Williams v. Dunn.* We hope that the clerks and attorneys will hereafter take notice of the procedure in such cases and be governed accordingly, as a compliance with the rule will prevent uncertainty and confusion, which is sure to follow its disregard, and will conduce to order and regularity in judicial proceedings—something much to be desired. The mistake in this case at first produced some little perplexity, which could easily have been avoided by proper attention to orderly arrangement. We believe, though, that we have, at last, succeeded in extracting from the record and stating correctly the relations of the parties and the facts of the case, and have thus removed its seeming complication and difficulty, and simplified the questions involved.

The defendant in the judgment and execution, John W. Williams, alleges that the sale by the sheriff is voidable by him because there was no legal advertisement or notice of the sale; that the execution was issued within forty days of the court to which it was returnable (Revisal, sec. 624); that the land, consisting of three lots, was sold *en masse* and not in separate parcels, and that Charles F. Dunn, the real plaintiff, as assignee

WILLIAMS *v.* DUNN.

of the original plaintiff, did by fraudulent representations and conduct obtain the land, as purchaser, at an undervalue, the price he paid being grossly inadequate.

The law requires a sheriff to advertise a sale under execution and to serve a copy of the advertisement upon the defendant ten days before the sale. Revisal, secs. 641, 642. A failure to comply with this provision of the statute, which is directory, will not render the sale void as against a stranger without notice of the irregularity, nor can it be assailed collaterally, but in such a case the defendant may, on motion, or by direct proceeding, have the sale vacated.

In *Burton v. Spiers and Clark,* 92 N. C., 503, *Justice Ashe* said for the Court: "It is well settled as a general rule, that a purchaser at execution sale is not bound to look further than to see that he is an officer who sells, and that he is empowered to do so by an execution issued from a court of competent jurisdiction, and he is not affected by any irregularities in the conduct of the sheriff. *Mordecai v. Speight,* 14 N. C., 428; *McEntire v. Durham,* 29 N. C., 151. It follows from this, that a purchaser may get a good title at a sheriff's sale, when there has been no advertisement of the sale; but this is subject to qualifications: As where the purchaser is a stranger, he will get a good title, notwithstanding any irregularities there may have been in the management of the sheriff. *Oxley v. Mizle,* 7 N. C., 250. But when the purchaser is the plaintiff in the execution, or his attorney, or any other person affected with notice of the irregularities, the sale may be set aside at the instance of the defendant in the execution by a direct proceeding. If not so corrected, they cannot be made available by a collateral attack on the purchaser's title. Hence, an execution sale cannot be collaterally avoided because real estate was sold without first levying upon personalty, nor because of irregularities or deficiencies in the advertisements, nor for defects in the levy (Herman on Executions, sec. 39; *Oxley v. Mizle, supra*); and it was held by *Chief Justice Ruffin* in the case of *Harry v. Graham,* 18 N. C., 76, 'that an allegation of fraud against a purchaser at execution sale will not be heard from a stranger to the execution.'" *Dula v. Seagle,* 98 N. C., 458; *Sanders v. Earp,* 118 N. C., 275.

WILLIAMS *v.* DUNN.

In the *Dula case, Chief Justice Smith* said: "The sheriff acts under the law that prescribes his duties, with a proper responsibility to those affected by what he does. If he sells under execution without advertising, as required by law, and the purchaser has no notice of this dereliction of duty, he acquires title; but it would be otherwise if the sale was at a time or place not warranted by law, because the purchaser is charged with knowledge of this legal requirement, and does not buy in good faith. *S. v. Rives,* 27 N. C., 297; *Mayers v. Carter,* 87 N. C., 146."

Our case is a good illustration of the justness of the rule. For some reason, and none other than the omission to duly advertise the sale can be fairly assigned, there were no bidders present, and there was, consequently, no competition. In this way the purchaser bid in the land at about one-eighth of its real value, and land worth $800 to $1,000 was sold to pay a debt of less than $45. "This is calculated to cause surprise and to make one exclaim, Why, he got it for nothing! There must have been some fraud or connivance about it." *Worthy v. Caddell,* 76 N. C., 82. Such an apparently unfair sale should not be permitted to stand unless the strict right of the purchaser, under the law, requires us to sustain it, and this we do not think is the case.

Apart from the irregularities in respect to the execution and sale, of which the purchaser, who had by assignment from Jesse E. Williams become the real plaintiff, had notice, it appears by the finding of the clerk that the sheriff sold three distinct lots *en masse,* when if sold separately any one of them would have brought a price far more than sufficient to pay the total of debt, interest and costs, and five times as much as required for that purpose, if the lot thus sold had brought anything like its market value.

The counsel of John W. Williams, the debtor, contends that the fact of selling the three lots as one entire parcel is of itself sufficient to vitiate the sale, and there is strong authority to be found in the decisions of other jurisdictions to sustain this position. Rorer on Judicial Sales, sec. 730, and cases cited; *Tiernan v. Wilson,* 6 Johns. Ch. (N. Y.), 415. But our decisions have not, up to this time, gone quite so far, as we will presently see.

It is generally agreed that it is the duty of the officer to sell in the exercise of a fair discretion, and to the best advantage, so as to make the debt and costs to be levied by the execution without unnecessary sacrifice of the debtor's property. "The proposition is not to be disputed," said *Chancellor Kent* in *Tiernan v. Wilson, supra,* "that a sheriff ought not to sell, at one time, more of the defendant's property than a sound judgment would dictate to be sufficient to satisfy the demand of the writ, provided the part selected can be conveniently and reasonably detached from the residue and sold separately. The justice of this rule is self-evident. As long ago as the case of *Wordye v. Baily* (Noy., 59), *Gawdy, J.,* said, and the rest of the Court agreed with him, that if the sheriff, upon a *fi. fa.* for 40 shillings, takes five oxen, each of the value of 5 pounds, and sells them all, the defendant may have an action of trespass against him. In addition to what has been repeatedly said in our own courts (8 Johns. Rep., 333, 18 Johns. Rep., 362; 1 Johns. Ch. Rep., 502), I would refer to the case of *Executors of Stead v. Course* (4 Cranche, 403), in which the Supreme Court of the United States held, that if the collector sell a whole tract of land, when a small parcel of it would be sufficient, for taxes, he exceeds his authority, and a plea by the purchaser to a bill to set aside the sale was not to be sustained. It was the case of a sale in Georgia, under a law directing the collector to sell only so much land as was necessary to pay the taxes in arrear. The rule must be the same, without any positive law for the purpose. It rests on principle of obvious policy and universal justice." The learned Chancellor again says: "Any 10 acres taken from any corner of either of these lots would probably have raised the amount of the execution. The very circumstances of advertising and selling the whole supposed interest of the plaintiff, in both lots together, and for so small a demand, was calculated to excite distrust as to the title, and to destroy the value of the sale. It was a perversion of the spirit and policy of the power with which the sheriff was intrusted. It is difficult to define precisely the extent of property that a sheriff may sell together, in mass. There must be a sound discretion exercised by the officer,

and each case will furnish a rule applicable to it, under all its circumstances. It is sufficient to say that here is a case in which the abuse of discretion is too flagrant to be endured, and that the law will adjudge such a sale, in such a case, fraudulent. No person can hesitate for a moment to say that the sheriff ought not to have sold more than the interest of the plaintiff in one lot, at one time, and in one parcel; and I believe every one will be ready to conclude that the sale of one lot would have raised the $10 with equal facility as the sale together of both lots. I shall, accordingly, set aside the sale as fraudulent and void in law."

We have referred to this case at some length, as its facts so clearly resemble those to be found in this record, and yet our case more strongly appeals to the conscience of the Court for equitable relief to the debtor, who has so greatly suffered by the manner in which this sale was conducted at the instance of the plaintiff, who was the purchaser. The difference between the cases which makes in favor of this debtor is, that here there were three separate and distinct tracts, each having its own valuable improvements, while in the *Tiernan case* the tract was an entire one, and the Court held that a reasonably sufficient portion should have been cut off and sold, if the land was susceptible of such a division and the whole was not required to satisfy the writ. See, also, *Kinney v. Knaebel,* 51 Ill., 112, 121; *Berry v. Griffith,* 2 H. and G., 337; *Howson v. Deggart,* 8 Johns., 333; *Winters v. Burford,* 6 Cold., 328; *Kiser v. Riddick,* 8 Blackf., 382, 383; *McLean Bank v. Flagg,* 31 Ill., 290; *Phelps v. Cowan,* 25 *ibid.,* 309; Freeman on Executions (3 Ed.), sec. 295, and especially 296.

Perhaps by no means can we procure a more correct and just view of the duties of the sheriff or other officer in the proceedings which he is authorized to take, after levying upon property for the purpose of producing a satisfaction of the plaintiff's demand, than by conceding that such officer is the agent of both parties, and as such is charged with duties which are not wholly compatible, and which must, nevertheless, be reconciled. It is true that the officer owes to the plaintiff the duty of making the money

at or before the return day of the writ, and may be considered as the agent of the plaintiff, charged with the duty of producing a satisfaction of the writ. On the other hand, he is equally the agent of the defendant, charged with the duty of so disposing of his property that the writ against him shall be satisfied with no needless injury or sacrifice. Hence, as the duty of selling the property is modified by the duty of not needlessly sacrificing it, the officer has a discretion with respect to the time and mode of sale. A reasonable discretion, however, is allowed to be exercised in order that the object of the writ may be accomplished, not frustrated, and that the property of the debtor be not causelessly sacrificed. There is no iron rule in regard to this matter, but it may be said that the officer should exercise a sound discretion, honestly and impartially, as between the parties, remembering that he is the sworn minister of the law and not the servant or emissary of either commissioned to advance, in a covetous manner, the interests of his employer. As is the duty of the just and impartial judge, he should hold the scales evenly balanced.

Judge Freeman, speaking to this very question, said: "Where several distinct parcels of real estate, or several articles of personal property, are to be sold, what is called a 'lumping sale' can rarely be justified. Such a sale when objected to in due time, will not be upheld, unless special circumstances can be shown from which it must be inferred that such sale was either necessary or advantageous. It is sometimes said that such a sale will not be vacated until it is shown to have injured some one. The command of the law that distinct parcels of land shall be offered for sale separately is founded on the assumption that, by so offering them, the best price will probably be secured and the sale not result in the taking from the defendant of any more property than is necessary to satisfy the writ." Freeman on Executions, sec. 296, p. 1703.

Some of the courts have expressed themselves strongly in emphatic condemnation with regard to sales in mass of property divided into separate parts or lots, going to the length of saying that, "Sales in a lump of real estate held in parcels are not

to be countenanced or tolerated." Rorer Jud. Sales (2 Ed.), sec. 730, and the numerous cases in note 6.

But we have not referred to the authorities above for the purpose of approving all that is therein said, as this Court has formulated a rule of its own upon the subject, which we will follow in this case, as it fully sustains the judgment below, and it is not necessary that we should go beyond it, as the facts are now presented to us.

In *Wilson v. Twitty,* 10 N. C., 44, *Judge Hall* opens his opinion by saying: "It is much to be regretted that a more particular rule of conduct has not, by the law, been prescribed to sheriffs in sales of landed property under execution." He then states that while he believes it is not usual to sell separate parcels at once and as a whole, it is not forbidden in express terms, and then adds: "But it is surely the sheriff's duty to sell in the way that will likely be most beneficial for both parties. I mean in the way that will produce the most money." He then strongly intimates that circumstances of fraud or oppression prejudicial to the debtor should avoid the sale, each case to be judged by its own facts. At the same term it was held in *Thompson v. Hodges,* 10 N. C., 51, that "a sale by a sheriff, *en masse,* of tracts of land adjoining each other will be supported." But in both of these cases the jury had found, under the evidence and charge of the court below (*Nash, J.,* presiding in one and *Norwood, J.,* in the other), that there was no element of fraud or oppression. In the *Wilson* case, *Judge Nash* had charged the jury that the duty of the sheriff was to levy on the entire tract and to sell the parcels separately, but he directed them to find whether the debtor had authorized the sale as made by the officer, and had furnished a description of the land to him. In the *Thompson* case, *Judge Norwood* charged the jury, "that a sheriff is bound to use such means in the sale of property under execution as any ordinary and prudent man would do in the sale of his own property, in order to make it bring the best possible price." The verdict of the jury was for the lessor of the plaintiff, and the Court discharged the rule for a new trial. Both cases were affirmed in this Court.

So the exact duty of the sheriff was not defined·by this Court in them, nor consequently was it decided what effect failure to perform it would have upon the validity of the sale.

In *Jones v. Lewis,* 30 N. C., 70, which soon followed the other two cases and cited them, it appeared that executions issued and were, by the sheriff, levied on the undivided interests of John C. and Atlas Jones in the premises, which consisted of several tracts. The land was sold by the officer, and at the sale each tract was set up separately, and the interest of the defendant in it sold at one bid. Jesse Person was the purchaser, and to him the sheriff executed the deed. The sale was attacked collaterally in an action of ejectment. No fraud or other equitable element was shown, if it could have availed anything in such an action, where there was no direct attack. *Judge Nash* said for the Court: "The second objection is that the interests of John C. and Atlas Jones in the land were sold at one bid, instead of being sold separately. There is no allegation of fraud in the transaction, nor is there any complaint on the part of the owners of the land that their interests have been injured by the mode pursued. We admit that it is unusual, but we do not see that it is therefore contrary to law. The law points out no specific mode in which a sheriff shall *conduct* the sale, but he is bound, by general principles, to sell the property levied on in such way as will probably raise the most money. The office of the sheriff is a highly responsible one, and much discretion must, in many cases, be allowed him. In this case, John C. and Atlas Jones were owners of two undivided fifths of the land sold; it might have been beneficial to them to have their respective interest sold by the same bid; the land thereby might have produced more. But this was a question of fact which, if pertinent to the case, ought to have been submitted to the jury, and we cannot say, as a matter of law, that the sale, for that case, is absolutely void." That case was followed by *Huggins v. Ketchum,* 20 N. C. (Anno. Ed.), 550, in which *Judge Daniel* thus refers to the method of sale by the sheriff: "If the lands embraced in that description comprehended more tracts or parcels of land than one, a sale *en masse* by the sheriff will still be supported, because it is warranted by

his execution, and no fraud is shown either in the sheriff or the purchaser. *Wilson v. Twitty,* 10 N. C., 44; *Thompson v. Hodges, ib.,* 51." And he enlarged upon this view in the subsequent case of *Davis v. Abbott,* 25 N. C., 137, as follows: "Under the execution, issued to satisfy the first judgment mentioned in the case, the sheriff sold *by the acre* as much of the land that had been levied on as made the debt and costs. This mode of sale is not usual, we admit, but we cannot conceive that there is anything illegal in it, and in this case there is no pretense of fraud in the sheriff or. loss by the debtor. If chattels are levied on, the sheriff sells the same in parcels, so as to make the debt by as few of them as he can conveniently. If he can save to the defendant a part of his land levied on, and satisfy the execution out of the remainder, the defendant must generally be benefited by it. The sheriff is a high and responsible officer, and a reasonable discretion, exercised by him in making sales, whether by exposing the whole tract or selling by the acre, we think is allowable; both the plaintiff and the defendant may, in many cases, be benefited by it."

The question arose in *McCanless v. Flinchum,* 98 N. C., 358, and *Chief Justice Smith* said: "The defendants say that the sale was made by the sheriff in bulk, and they insist that his deed to the plaintiff was void for that reason. It is undoubtedly the duty of the sheriff to sell in such way as to realize, so far as he may be able to do so, a fair price for the property sold under execution, and if he fails to do so, the sale is voidable, and, upon objection, may be set aside; but this is a question of fact which ought to be submitted to the jury. *Jones v. Lewis,* 30 N. C., 70."

In *McLeod v. Pearce,* 9 N. C., 110, the Court held that chattels, consisting of various specific articles, taken in execution, cannot be sold *en masse;* the sheriff should conform, as nearly as possible, to such rules as a prudent man would probably observe in selling his own property for the sake of securing a fair price. *Judge Henderson,* in the course of the opinion, said: "The sale is void, on the ground that the *whole* of defendant's interest in the property held by his mother for life

was put up by the sheriff and sold at one time, and even without pointing out what the property consisted of; such sale was unfair as tending to lessen the price, to give one bidder, who might have a knowledge of the property, an advantage over the rest, and to encourage speculation. The law which constitutes the sheriff the agent of the parties without their consent will see that he acts fairly; and it is upon this principle that it is necessary for the sheriff to seize the property and have it ready to deliver to the purchaser when from its nature it is capable of seizure. The Court would not be understood to say that where property consisted of a variety of small articles, each article should be sold separately, or he be required to sell separately where it is usual for the owners to sell in the gross; for instance, hogs in parcels, a flock of geese, or sheep, or other things, where it is customary for the owners of them to sell in such manner. Nor would a sale be invalidated where there might be difference of opinion as to the common or proper mode; it must appear *palpably* wrong; no man would adventure here, unless he had a knowledge which it was not to be supposed others possessed, or was a mere speculator."

In *Bevan v. Byrd,* 48 N. C., 397, it appeared that a quantity of unshucked corn belonging to the plaintiff had been levied upon by a constable, who was sued in case for selling *en masse,* and in the absence of the plaintiff, thereby causing the corn to be purchased at an undervalue, to the plaintiff's damage, and this Court held that it was no violation of the officer's duty to divide the corn into small piles and sell it by the pile, *Nash, C. J.,* saying: "When an officer levies an execution upon property, it is his duty so to conduct the sale as will be most beneficial to all parties. The law points out no particular mode in which an officer shall conduct his sales; but he is bound by general principles to sell the property in that way which will probably bring the most money. He is the agent of both parties, appointed by the law to conduct the sale, and must act in good faith to both, and both are interested that the articles shall bring the greatest amount of money; particularly is it important to the defendant. When various articles are

levied upon, they cannot be sold *en masse;* the officers must conform as nearly as possible to such rules as a prudent man would pursue in selling his own property," citing *Jones v. Lewis, supra,* and *McLeod v. Pearce, supra.* It was also held that whether the corn had been properly sold was a question of fact for the jury, to be decided by them under proper instructions from the court as to the law, the judge adding: "The practical eye of the experienced farmer can pretty well inform him of the quantity of corn, both in field and in a pile. The purchaser's eye is his chapman."

We have reviewed a few of the cases somewhat at length, on account of the great importance of the question and for the further reason that very little has been said about it by this Court in recent years. It may serve to stimulate officers to a just performance of their important and delicate duty, and to advise them in some manner as to how it should be performed.

One clear result to be deduced from the foregoing authorities is, that if property is sold *en masse,* or in bulk, when it could reasonably be sold in parcels without prejudice to the parties, creditor or debtor, and there is any fraud or oppression, or even unfairness, whereby it is sold at a disadvantage to the debtor, the sale will be voidable by him in a direct proceeding to set it aside.

The facts in this case are so plainly against the fairness of the purchaser's conduct, he being also the plaintiff in the writ, that, as said by *Justice Reade* in a somewhat similar case (*Andrews v. Pritchett,* 72 N. C., 135), it requires no very nice application of them "to stamp this transaction with fraud." Let us assemble a few of the most salient facts:

The land brought a grossly inadequate price, which is a badge of fraud. Charles F. Dunn knew the land, and took advantage of his superior knowledge to deceive and mislead the debtor's attorney as to its real value, and at a time when investigation by the latter could not well be made before the sale. This was fraudulent conduct, as it accomplished its purpose. *Machine Co. v. Bullock,* 161 N. C., 1. There was no competition at the sale, by reason of the purchaser's conduct and the failure to advertise the sale properly, and he,

WILLIAMS v. DUNN.

therefore, bought at his own price—$125 for land worth nearly. if not quite $1,000; and finally, the land was sold when there was personal property sufficient to pay the amount due and the costs. The debtor, after the sale, tendered to Dunn not only the amount of the debt, interest and costs, which was all the law required him to do, but the full amount bid by him for the land, and he refused to accept it. The land was sold, notwithstanding Dunn's attention had been called to the irregularities in his execution, the levy and the advertisement. The land, consisting of three separate lots, was sold as a whole, when if any one of the lots had been sold, the proceeds would have been far more than sufficient to pay the debt and costs.

This is not all, but it is surely enough for the purpose of deciding this case. These facts show palpably that the plaintiff in the execution was coveting the land, and not merely seeking, in a fair and legitimate way, the recovery of his debt. The process of the law should not be perverted to such an avaricious and fraudulent object. It will compel the debtor to pay, but will not tolerate unfairness and oppression.

The facts clearly bring this sale within the condemnation of the law, without deciding whether, under our decisions, a much weaker showing would be sufficient to avoid it. The sale *en masse,* with the attendant circumstances of fraud and irregularity, render the sale void as to the debtor. This affirms the judgment.

It is just to the sheriff to say that no wrong can fairly be imputed to him. It was all due to the fault of the purchaser, who, under cover and the supposed protection of the court's process and with special and peculiar knowledge of the facts, sought to use it for the evident purpose of deriving an unfair advantage, and thereby bought the property at a grossly inadequate price, to the great sacrifice and damage of his debtor. We have no idea that the sheriff was cognizant of any such inequitable conduct on the part of the purchaser; the debtor makes no charge against him of complicity, and we, therefore, fully acquit him of all blame. The acts of the creditor are alone sufficient to annul the sale.

No error.