ROGER SWINDELL AND WIFE, BETTY L. SWINDELL v. LARRY OVERTON, SUBSTITUTE TRUSTEE, THOMAS EDISON CAHOON AND WIFE, JULIA JONES CAHOON, WALTER G. CREDLE AND WIFE, DONNA S. CREDLE

No. 323PA83

(Filed 30 April 1984)

**Mortgages and Deeds of Trust § 27— foreclosure sale—failure to receive separate bids for two tracts of land error**

    In an action by plaintiffs seeking to have a foreclosure sale set aside, the Court of Appeals erred in finding that the foreclosure sale should not be set aside and in finding plaintiffs' action for conversion of crops should not lie since plaintiffs were obligors on three separate notes for $2,000, $30,000, and $2,589, secured by two deeds of trust on two different tracts of land; the worth of the land was alleged to be in excess of $70,000, excluding the value of a growing soybean crop on one of the tracts, to which an additional $50,000 in value was alleged; and despite plaintiffs' request that bids be received for the two tracts of land separately as well as together in order to maximize the potential sale price, defendant trustee advertised and sold the land together, in one offering, with the Credles purchasing at the third and final sale for $47,980. The *en masse* sale of these two tracts of land constituted a material and prejudicial irregularity since, had the two tracts of land been sold separately, the plaintiffs might have recouped an amount on one tract sufficient to repay the debt on the second, thus saving at least one of the two pieces of property, and common law principles of equity, unaffected by G.S. 45-21.34, .35, are applicable to *set aside* the foreclosure sale.

    Justice COPELAND did not participate in the consideration or decision of this case.

ON discretionary review of the decision of the Court of Appeals, 62 N.C. App. 160, 302 S.E. 2d 841 (1983), affirming in part

and reversing in part summary judgment entered in favor of defendants on 15 December 1981 by *Peel, J.*, in Superior Court, HYDE County. Heard in the Supreme Court 13 March 1984.

This is an action by plaintiffs to have a foreclosure sale set aside and for monetary damages. The parties do not dispute the following chronology of facts.

On 15 May 1969, plaintiffs executed a deed of trust to George D. Davis, Trustee, on a thirty-acre tract of land in Hyde County to secure a promissory note for $2,000 payable to B. M. Weston. On 7 April 1978, plaintiffs executed a deed of trust on a separate 42.6 acre tract of land in Hyde County to Hugh Q. Alexander, Jr., Trustee, securing a note payable to Wachovia Bank & Trust Company in the sum of $30,000.

About a year later, on 19 April 1979, plaintiffs executed a document entitled "Personal Note and Agreement" to defendants Thomas E. and Julia J. Cahoon for $2,589. In this note, plaintiffs acknowledged that the notes to B. M. Weston and Wachovia Bank & Trust Company had been assigned to the Cahoons and that all monies owed to the Cahoons were secured by those lands described in the two deeds of trust. Plaintiffs defaulted under the terms of their note to the Cahoons. On or about 17 April 1980, defendant Larry S. Overton was substituted as trustee to foreclose the deeds of trust securing the $2,000 note and the $30,000 note.

On 23 April 1980, defendant Overton, as substitute trustee, commenced foreclosure proceedings on both deeds of trust. The order of foreclosure was entered by the Clerk of Superior Court of Hyde County, Walter A. Credle (no close relation to defendants Credle), on 9 May 1980.

On 7 August 1980, a sale of both tracts of land was held by defendant Overton, with Lennie Perry of Bertie County the highest bidder at $40,000. A resale of both tracts was held on 11 September 1980 upon an upset bid of $45,600 by Ira B. Hall of Norfolk, Virginia. A second resale of both tracts took place on 17 October 1980. Defendant Walter G. Credle was the highest bidder for the sum of $47,980. Roger Swindell attended each of the three sales.

On 28 October 1980, plaintiffs' attorney telephoned the Clerk of Hyde County Superior Court to inform him of the Swindells' objection to a confirmation of the resale to defendants Credle on the grounds that the $47,980 selling price was below the fair market value of both tracts of land. When told that plaintiffs were preparing a restraining order to prevent confirmation of the sale, the clerk responded that "if the confirmation of resale was presented before the restraining order, there would be no alternative but to sign the confirmation of resale."

There ensued the following sequence of events: On 29 October 1980 at 9:00 a.m., plaintiffs appeared before the Honorable Frank R. Brown, superior court judge assigned to hold court in the Second Judicial District, who was presiding over a session of criminal superior court in Martin County at the courthouse in Williamston, N.C., seeking a temporary restraining order pursuant to N.C.G.S. 45-21.34.

That same day, at 9:45 a.m., an assistant clerk of Hyde County Superior Court signed an order confirming the resale of the land to the Credles. At 10:30 that morning, Judge Brown signed the temporary restraining order which—along with the motion, supporting affidavits, and a summons and complaint for defendants—was then transported by plaintiffs' attorney to the office of the Clerk of Superior Court for Hyde County in Swan Quarter, N.C., where they were filed at 1:45 p.m. that day.

In their original complaint filed on 29 October 1980, plaintiffs alleged that the fair market value of the land foreclosed was at least $70,000 and the bid of the defendants Credle was substantially inadequate and inequitable. They sought to have the clerk restrained from confirming the sale; they further demanded a resale of the two tracts of land pursuant to N.C.G.S. 45-21.35.

On 3 November 1980 Judge Brown entered an order dissolving the temporary restraining order and denying plaintiffs' motion. He had concluded, inter alia, that "this Court is without jurisdiction to grant the relief prayed for in the plaintiffs' Complaint in that the Confirmation entered by the Hyde County Clerk of Superior Court in the foreclosure was signed and filed prior to the granting of the Temporary Restraining Order by the undersigned." Plaintiffs excepted to, but did not appeal from, that order.

That same day, defendant Overton conveyed the foreclosed tracts of land to defendants Credle. After payment of the $2,000 note, the $30,000 note, the $2,589 note, and the expenses of the foreclosure sale, there remained a surplus in the amount of $4,739.62, which was paid into the clerk of superior court's office.

On 25 January 1981, plaintiffs moved to amend their complaint. On 20 February 1981, Judge David E. Reid, Jr. entered an order dismissing plaintiffs' original complaint and allowing their motion to amend.

In the amended complaint, filed 23 March 1981, plaintiffs alleged, in addition to the inadequacy of the sale price, that defendant Overton had improperly conducted the foreclosure sale in that he had sold both tracts of land together at each sale and resale although he had been requested by plaintiffs to sell the tracts of land separately and to obtain both separate bids and combination bids in an effort to bring more money. Plaintiffs alleged they had been damaged in the sum of $60,000 by defendant Overton's failure to fulfill his duties as fiduciary for all parties to these proceedings. Plaintiffs further alleged, in a second claim for relief, that prior to 14 April 1980 they had expended more than $15,000 in planting and cultivating a soybean crop on one of the tracts and had requested defendants' permission to harvest the crop in the fall of 1980 or, in the alternative, that the harvest proceeds be held in escrow pending resolution of this action. Plaintiffs alleged that defendants Credle refused this request, harvested the crop, and were unjustly enriched thereby in the amount of more than $50,000. In third and fourth claims for relief, plaintiffs alleged that attorneys' fees for defendants Cahoon had been wrongly charged by defendant Overton to the foreclosure expenses and, finally, that the interest rate on the personal note to the Cahoons was excessive.

In this amended complaint plaintiffs prayed for, inter alia, the following relief: (1) damages of $50,000 against defendants Credle for conversion of the soybean crop; (2) damages of $2,165.60 against defendants Cahoon and Overton for the improper payment of attorneys' fees; (3) damages of $7,189.11 against defendants Cahoon for excessive interest charged; (4) that the clerk be permanently enjoined from confirming the sale pursuant to N.C.G.S. 45-21.34, or, in the alternative, that the sale be

set aside; (5) that a proper resale of the lands be ordered or, in the alternative, damages in the amount of $100,000 from defendants Overton and Cahoon pursuant to the alleged irregularities in the foreclosure proceedings.

All defendants moved for summary judgment on all claims. On 15 December 1981, Judge Elbert S. Peel, Jr. made the following rulings: He allowed motions for summary judgment for defendants Cahoon and Overton as to all claims except for improper payment of attorneys' fees and excessive interest. He allowed the motion for summary judgment of defendants Credle as to all claims.

The Court of Appeals reversed Judge Peel's dismissal of the plaintiffs' claim for damages for breach of fiduciary duty against Overton and remanded the case for trial on this claim. It affirmed all other rulings of the trial judge.

*J. Michael Weeks, P.A., by J. Michael Weeks, for plaintiffs.*

*Cherry, Cherry, Flythe and Overton, by Thomas L. Cherry and Joseph J. Flythe, for defendant Overton.*

*Geo. Thomas Davis, Jr. for defendants Credle.*

MARTIN, Justice.

In its opinion, the Court of Appeals held that pursuant to N.C.G.S. 45-21.34, .35, Judge Peel had correctly entered summary judgment for defendants Overton, Cahoon, and Credle as to plaintiffs' right to injunctive relief in this matter. "Once the Clerk's Order of Confirmation is entered, an action for injunctive relief will not lie. . . ." 62 N.C. App. at 166, 302 S.E. 2d at 845. The opinion further concluded, at least by implication, that the plaintiffs Swindell are also barred from the remedy of setting aside the foreclosure sale on the same grounds that their action was not brought until after the sale was confirmed. Upon this conclusion rests the holding that summary judgment in favor of the Credles was therefore proper on the issue of plaintiffs' claim for damages against the Credles for conversion of the soybean crop, given the well-settled North Carolina rule that the purchaser at a foreclosure sale is entitled to crops unsevered at the time of the trustee's delivery of the deed. *Collins v. Bass,* 198 N.C. 99, 150

Swindell v. Overton

S.E. 706 (1929). We granted discretionary review to consider the correctness of these conclusions, and we reverse. As a matter of law plaintiffs should be allowed to challenge the clerk's confirmation of a foreclosure sale by an independent action under circumstances hereinafter set forth. We further find that the forecast of evidence as established by the exhibits and affidavits before the trial court was clearly sufficient to survive the summary judgment motion of the defendant-purchasers Credle.

The trustee is bound by his office to present the sale under every possible advantage to the debtor as well as to the creditor. He is bound to use not only good faith but also every requisite degree of diligence in conducting the sale and to attend equally to the interest of the debtor and creditor alike. *Mills v. Building & Loan Assn.*, 216 N.C. 664, 6 S.E. 2d 549 (1940).

Our analysis is twofold: (1) Plaintiffs are correct in applying this Court's decision in *Foust v. Loan Asso.*, 233 N.C. 35, 62 S.E. 2d 521 (1950), to this case. (2) Because the facts of this case do not support a finding that the defendants Credle were innocent purchasers for value, they are not protected thereby from having the foreclosure sale set aside.

In *Foust*, property having a market value of approximately $6,000 was sold at foreclosure for $825. The trustee erroneously reported that it was sold for $6,400. The sale was confirmed. This Court responded as follows: "These facts raise the single question of law: Was the irregularity in the report of such substantial nature as to require the Court to vacate the order of confirmation and the deed executed pursuant thereto? We must answer in the affirmative." 233 N.C. at 36, 62 S.E. 2d at 523.

The Court spoke to the nature and potential effects of the irregularity:

There is no contention that the error in the report was deliberate, or was prompted by an evil purpose, or was other than the result of an honest mistake. It appears to have been one of those slips which may occur in business transactions. Nonetheless, it was highly deceptive and its natural and probable effect was to chill any desire on the part of interested parties to engage in further competitive bidding. Thus it tended to prevent any upset bid.

Actuality of injury is not a prerequisite of relief. The potentialities of the error, considered in connection with the grossly inadequate price, compel the conclusion that *the irregularity in the sale was material and prejudicial—sufficient in nature to justify the interposition of a court of equity.*

233 N.C. at 37-38, 62 S.E. 2d at 523 (emphasis added).

Allegations of inadequacy of the purchase price realized at a foreclosure sale which has in all other respects been duly and properly conducted in strict conformity with the power of sale will not be sufficient to upset a sale. *Hill v. Fertilizer Co.*, 210 N.C. 417, 187 S.E. 577 (1936); *Roberson v. Matthews; Matthews v. Roberson*, 200 N.C. 241, 156 S.E. 496 (1931); *Weir v. Weir*, 196 N.C. 268, 145 S.E. 281 (1928). *Foust* stands for the proposition that it is the materiality of the irregularity in such a sale, not mere inadequacy of the purchase price, which is determinative of a decision in equity to set the sale aside. Where an irregularity is first alleged, gross inadequacy of purchase price may then be considered on the question of the materiality of the irregularity. *Foust, supra,* 233 N.C. 35, 62 S.E. 2d 521; *Hill v. Fertilizer Co., supra* (and cases cited therein). Where inadequacy of purchase price is necessary to establish the materiality of the irregularity, it must also appear that the irregularity or unusual circumstance caused the inadequacy of price. 2 Wiltsie, *Mortgage Foreclosure* § 899 (5th ed. 1939).

Plaintiffs Swindell were obligors and defendants Cahoon were obligees on three separate notes for $2,000, $30,000, and $2,589, secured by two deeds of trust on two different tracts of land. The worth of the land was alleged to be in excess of $70,000, excluding the value of a growing soybean crop on one of the tracts, to which an additional $50,000 in value was alleged. Despite plaintiffs' requests that bids be received for the two tracts of land separately as well as together in order to maximize the potential sale price, defendant Overton advertised and sold the land together, in one offering, with the Credles purchasing at the third and final sale for $47,980.

We hold that the *en masse* sale of these two tracts of land constituted a material and prejudicial irregularity commensurate in severity to that found by the Court in *Foust.* Had the two

tracts of land been sold separately, the Swindells might have recouped an amount on one tract sufficient to repay the debt on the second, thus saving at least one of the two pieces of property. The property had the alleged potential of yielding over $120,000, including the alleged $50,000 soybean crop.

It must be remembered that this case involves two distinct deeds of trust. Arguments having to do with the discretion of the trustee to sell land as a whole or in parcels have no place here, but are properly considered where the land in question is conveyed in a single mortgage instrument. We are in agreement with the following conclusion of the Court of Appeals in its opinion:

> [S]ales of *separately indentured* properties must be separately conducted, in order to (1) maximize the potential value of each tract; (2) to facilitate the debtor's opportunity to satisfy each separate debt before sale is completed; (3) to properly allow upset bids on each separate property; and (4) to properly apply the proceeds from each sale, including the surplus, if any.

62 N.C. App. at 169, 302 S.E. 2d at 847 (emphasis added).

We note that the preferred procedure, where possible, is for the party selling to obtain the mortgagor's agreement in advance as to the method of sale. *See* Osborne, Nelson, Whitman, *Real Estate Finance Law* § 7.20 (1979).

Our holding today is not affected by N.C.G.S. 45-21.34, .35. These statutes limit injunctive relief in foreclosure proceedings. Here, we are applying common law equitable principles to *set aside* a foreclosure sale. These principles are unaffected by these statutes. The Court of Appeals erroneously concluded otherwise.

It is true that where the defect in a foreclosure sale renders the sale voidable, as in the case at bar, the mortgagor's right of redemption can be cut off if the land is bought by a bona fide purchaser for value without notice. In such instances, a plaintiff is left with an action for damages against the trustee as his only remedy. *Davis v. Doggett,* 212 N.C. 589, 194 S.E. 288 (1937).

> If the sale purchaser has paid value and is unrelated to the mortgagee, it would seem that he should take free of voidable defects if: (a) he has no actual knowledge of the defects;

(b) he is not on reasonable notice from recorded instruments; and (c) the defects are not such that a person attending the sale exercising reasonable care would have been aware of the defect.

Osborne, Nelson, Whitman, *supra. See also* 2 Wiltsie, *supra,* § 780.

The Credles claim the status of "bona fide purchasers for value without any notice of irregularity." The advertisement of sale itself disclosed separate debts secured by two separate deeds of trust on two separate tracts of land. We hold that the purchasers had notice of the significant defect in the proceeding.

Applying these holdings to the opinion of the Court of Appeals, the results are:

(1) The Court of Appeals erred in affirming the summary judgment against plaintiffs on the action to set aside the sale. We therefore reverse.

(2) The Court of Appeals erred in affirming the summary judgment against plaintiffs on the action for conversion of crops. We therefore reverse.

(3) The Court of Appeals correctly reversed the summary judgment against plaintiffs' claim for breach of fiduciary duty. We therefore affirm.

(4) The Court of Appeals correctly affirmed plaintiffs' amending their complaint. We therefore affirm.

The case is remanded to the Court of Appeals for further remand to the superior court for proceedings not inconsistent with this opinion.

Reversed in part; affirmed in part.

Justice COPELAND did not participate in the consideration or decision of this case.