IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-35

No. 77A19

Filed 16 April 2021

IN THE MATTER OF THE PROPOSED FORECLOSURE of a Claim of Lien filed on Calmore George and Hygiena Jennifer George by The Crossings Community Association, Inc. dated August 22, 2016, recorded in Docket No. 16-M-6465 in the Office of the Clerk of Court of Superior Court for Mecklenburg County Registry by Sellers Ayers Dortch & Lyons, P.A., Trustee

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 264 N.C. App. 38 (2019), dismissing, in part; affirming, in part; and reversing and remanding, in part, an order entered on 15 March 2018 by Judge Nathaniel J. Poovey in Superior Court, Mecklenburg County. Heard in the Supreme Court on 12 January 2021.

> *Thurman, Wilson, Boutwell & Galvin, P.A., by James P. Galvin, for petitioner-appellants.*
>
> *Derek P. Adler for intervenor-appellee National Indemnity Group.*
>
> *James, McElroy & Diehl, P.A., by Preston O. Odom, III, for intervenor-appellee KPC Holdings.*
>
> *No brief for for respondent-appellee Sellers, Ayers, Dortch & Lyons, P.A.*
>
> *Legal Aid of North Carolina, Inc., by Celia Pistolis and Johnnie Larrie; Karen Fisher Moskowitz for Charlotte Center for Legal Advocacy; Jason A. Pikler for North Carolina Justice Center; and Maria D. McIntyre for Financial Protection Law Center, amici curiae.*

ERVIN, Justice.

¶ 1     This case involves the issue of whether the trial court abused its discretion in concluding that two purchasers, the first of whom bought a tract of property at a nonjudicial foreclosure sale and the second of whom purchased the property from the initial purchaser, were not good faith purchasers for value. After a hearing concerning the issues raised by the property owners' motion for relief from a foreclosure order, the trial court determined that the transfers to both subsequent purchasers should be declared null and void given that the court lacked jurisdiction over the person of one of the property owners as the result of insufficient notice and deficient service of process. After a separate hearing that was held for the purpose of addressing the purchasers' motion for relief from the order voiding the initial foreclosure order and the resulting property transfers, the trial court determined that the subsequent purchasers were not entitled to good faith purchaser for value status or to the benefit of the protections afforded to subsequent good faith purchasers for value by N.C.G.S. § 1-108. On appeal, the Court of Appeals held that, even though the initial foreclosure order had been invalid on the grounds of insufficient notice, the property owner had received constitutionally sufficient notice and that both of the subsequent purchasers were entitled to good faith purchaser for value status. After careful consideration of the record in light of the applicable law, we affirm the decision of the Court of Appeals, in part; reverse that decision, in part; and remand this case to the Superior Court, Mecklenburg County, for consideration of the extent,

if any, to which an order of restitution should be entered pursuant to the applicable law.

¶ 2 Respondents Calmore George and his wife, Hygiena Jennifer George, owned a house in Charlotte that is located in the Crossings Community subdivision. The Georges decided to purchase the tract of property in question because their "daughters at that time were approaching college age and the first daughter decided that she wanted to come to North Carolina." After three of the Georges' younger daughters followed their older sister to North Carolina for their college education, the Georges decided to buy a house in which their daughters could live while obtaining their degrees.

¶ 3 The Georges lived in St. Croix in the United States Virgin Islands, where Ms. George worked as a teacher and an accounting clerk while Mr. George performed various jobs, including property maintenance. The couple's combined adjusted gross income in 2016 was $26,420.00. Although the Georges were full-time residents of St. Croix, they typically visited their daughters at the Charlotte property approximately once or twice each year. More specifically, Ms. George would typically visit the Charlotte property for approximately one month during the summertime, when she was on break from her teaching responsibilities, while both Mr. and Ms. George would visit the property for a few weeks around Christmas. The members of the family who lived in the home full-time took care of paying the bills and addressing other issues

relating to the property, including paying the water and energy bills that were mailed to the house.

¶ 4        On 22 August 2016, the Crossings Community Association, which served as the homeowners' association for the development in which the Georges' house was located, filed a claim of lien against the property relating to unpaid homeowners' association fees in the amount of $204.75. In its claim of lien, the Association stated that, if the outstanding fees remained unpaid, it would initiate foreclosure proceedings in accordance with the applicable provisions of North Carolina law. However, the Georges did not pay the outstanding homeowners' association fees.

¶ 5        On 11 October 2016, the trustee for the Association filed a notice of hearing stating that the Association intended to foreclose upon the property for the purpose of collecting the unpaid fees. The Association attempted to serve this notice of foreclosure upon the Georges in a variety of ways, including the use of both regular and certified mail, return receipt requested, directed to the St. Croix address listed on the deed by means of which the Georges had acquired the property and by both regular mail and certified mail directed to the address of the Charlotte property. However, the Association did not successfully effectuate service upon the Georges through the use of the mails because there was no mail receptacle at the St. Croix address and because the receipts for the mailings to the Charlotte address were never returned.

¶ 6 In addition, the Association attempted to effectuate personal service upon the Georges at the Charlotte property. On 12 October 2016, Deputy Sheriff Shakita Barnes of the Mecklenburg County Sheriff's Office personally served the notice of foreclosure upon a woman who identified herself as Hygiena Jennifer George at the Charlotte property and completed returns of service in which she stated that she had personally served Ms. George and that she had served Mr. George by leaving copies with Ms. George, a person of suitable age and discretion who resided at Mr. George's dwelling house or usual place of abode. The person upon whom Deputy Barnes actually effectuated service was, however, the Georges' eldest daughter, Jeanine George, who had claimed to be Ms. George at the time that she was served with the notice of foreclosure by Deputy Barnes. On 13 October 2016, the trustee filed the returns of service completed by Deputy Barnes and an affidavit indicating that the Crossings Community Association had unsuccessfully attempted to serve the Georges by mail.

¶ 7 On 9 December 2016, the office of the Clerk of Superior Court, Mecklenburg County, entered an order permitting the nonjudicial foreclosure sale to go forward, and scheduling a foreclosure sale relating to the property for 12 January 2017. On 12 January 2017, KPC Holdings purchased the property at auction for $2,650.22. On 3 February 2017, the trustee executed a foreclosure deed transferring ownership of the property to KPC Holdings. On 21 March 2017, KPC Holdings executed a special

warranty deed conveying the property to National Indemnity Group, an entity owned by Laura Schoening for property development purposes, with the sale of the property from KPC Holdings to National Indemnity having been secured by a promissory note and deed of trust in the amount of $150,000.00.

¶ 8        The Georges claimed to have had no notice of the unpaid homeowners' association fees and subsequent foreclosure proceeding until 10 March 2017, when one of their daughters called them for the purpose of reporting that they had been ordered to vacate the property. Upon receiving this information, Ms. George sent an e-mail to the Association's attorney in which she claimed that she and Mr. George did not understand why they were being dispossessed of their property and expressed the belief that she and Mr. George did not have any outstanding mortgage payments or owe any other debts associated with the property.

¶ 9        On 18 April 2017, the Georges filed a motion pursuant to N.C.G.S. § 1A-1, Rule 60(c), in which they sought to have the order of foreclosure and all other related proceedings and transactions declared null and void. In their motion for relief from judgment, the Georges claimed that they had not received the notice that was statutorily required in foreclosure proceedings, that the return of service completed by Deputy Barnes was erroneous, and that the order authorizing the foreclosure sale and the subsequent conveyances should be vacated. On 17 July 2017, the trial court

entered an order allowing an intervention motion filed by National Indemnity and making both National Indemnity and KPC Holdings parties to this proceeding.

On 17 July 2017, the trial court held a hearing for the purpose of considering the issues raised by the Georges' motion for relief from judgment, at which it heard testimony from the Georges and Ms. Schoening, who testified that she had purchased the property from KPC Holdings after having driven past the property and having conducted on-line research that included an inspection of the applicable property tax payment and prior foreclosure records. Among other things, Ms. Schoening testified that she had learned from the public record that the Georges had purchased the property at a previous foreclosure sale for an amount in excess of $130,000.00 and that, at the time of the foreclosure that was at issue in this case, they owned the property free and clear of any indebtedness, with the exception of the $204.75 amount that was allegedly owed to the Association. In addition, Ms. Schoening testified that her purchase of the property had been secured by a note and deed of trust in the amount of $150,000.00 that was payable to KPC Holdings, that she had invested approximately $50,000.00 in the course of renovating the property as of the date of the hearing, and that she planned to sell the property for $240,000.00 after it had become "retail ready."

On 9 August 2017, the trial court entered an order concluding that Mr. George had not been properly served with the notice of foreclosure given that the property

was not his dwelling or usual place of abode. In addition, the trial court further determined that the foreclosure sale had been allowed to proceed despite the lack of personal jurisdiction over Mr. George, so that the foreclosure sale and subsequent conveyances should be invalidated. As a result, the trial court granted the Georges' motion for relief from judgment and declared the deeds transferring the property from the trustee to KPC Holdings and from KPC Holdings to National Indemnity to be null and void. National Indemnity and KPC Holdings noted appeals to the Court of Appeals from the trial court's order granting the Georges' motion for relief from judgment.

¶ 12    On 3 November 2017, KPC Holdings and National Indemnity filed a motion for relief from judgment pursuant to N.C.G.S. § 1A-1, Rule 60(b)(6), in which they requested the trial court to vacate the earlier order granting the Georges' motion for relief from judgment on the grounds that they were both good faith purchasers for value and that the Georges had received constitutionally sufficient service of the notice of foreclosure in accordance with the Court of Appeals' then-recent decision in *In re Ackah*, 255 N.C. App. 284 (2017), *aff'd per curiam*, 370 N.C. 594 (2018). On the same date, KPC Holdings and National Indemnity filed a motion with the Court of Appeals in which they requested that this case be remanded to the trial court for the purpose of permitting it to make an indicative ruling concerning whether their motion for relief from the trial court's earlier order should be allowed or denied. The Court

of Appeals granted this remand motion on 22 November 2017. On 15 March 2018, the trial court entered an order concluding that neither KPC Holdings nor National Indemnity qualified as a good faith purchaser for value for purposes of N.C.G.S. § 1-108 and that their motion for relief from judgment was denied. KPC Holdings and National Indemnity noted appeals to the Court of Appeals from the trial court's indicative decision.

In seeking relief from the trial court's orders before the Court of Appeals, KPC Holdings and National Indemnity argued that the trial court had erred by failing to join the trustee under the deed of trust between the two of them,[1] by determining that the Georges had not received sufficient notice of the foreclosure sale, and by determining that neither KPC Holdings nor National Indemnity was a good faith purchaser for value. *In re George*, 264 N.C. App. 38, 41 (2019). In addressing the notice-related argument advanced by KPC Holdings and National Indemnity, the Court of Appeals began by recognizing that adequate notice must be provided to the record owners of a tract of property before a foreclosure is permissible and that, in the absence of such notice and "valid service of process, a court does not acquire personal jurisdiction over the [owner] and the [foreclosure] action must be dismissed." *Id*. at 45 (quoting *Glover v. Farmer*, 127 N.C. App. 488, 490 (1997)). The Court of

---

[1] As a result of the fact that KPC Holdings and National Indemnity have not brought their claim relating to the trial court's failure to join the trustee as a party forward for our consideration, we will refrain from discussing that issue any further in this opinion.

Appeals noted that the valid methods for the service of a notice of foreclosure include

the following:

> a. . . . [D]elivering a copy of the summons and of the
> complaint to the natural person or by leaving copies thereof
> at the defendant's dwelling house or usual place of abode
> with some person of suitable age and discretion then
> residing therein.
>
> . . . .
>
> c. . . . [M]ailing a copy of the summons and of the complaint,
> registered or certified mail, return receipt requested,
> addressed to the party to be served, and delivering to the
> addressee.

*In re George*, 264 N.C. App. at 45–46 (third alteration in original) (quoting N.C.G.S §

1A-1, Rule 4(j)(1)(a), (c) (2017)), the Court of Appeals expressed agreement with the

trial court's determination that the trustee had failed to properly serve the notice of

foreclosure as required by N.C.G.S. § 1A-1, Rule 4, given that the attempted service

"upon [Mr.] George by leaving a copy at the Mecklenburg County property was

inadequate because the property was not his dwelling house or usual place of abode."

*In re George*, 264 N.C. App. at 47. As a result, the Court of Appeals concluded that

"the trial court correctly determined that the foreclosure sale was void due to lack of

personal jurisdiction over [Mr.] George." *Id.* at 48.

¶ 14        At that point, the Court of Appeals turned to the argument advanced by KPC

Holdings and National Indemnity that they both qualified as good faith purchasers

for value entitled to the protections available pursuant to N.C.G.S. § 1-108. *Id.* The

Court of Appeals recognized that, if "a judgment is set aside pursuant to Rule 60(b) or (c) of the Rules of Civil Procedure[,] . . . such restitution may be compelled as the court directs," with "[t]itle to property sold under such judgment to a purchaser in good faith . . . not [being] thereby affected." *Id.* (quoting N.C.G.S § 1-108 (2017)). According to the Court of Appeals, a party qualifies as a good faith purchaser for value for purposes of N.C.G.S. § 1-108 when it "purchases without notice, actual or constructive, of any infirmity, and pays valuable consideration and acts in good faith," *id.* at 49 (quoting *Morehead v. Harris*, 262 N.C. 330, 338 (1964)), with this Court's decision in *Swindell v. Overton*, 310 N.C. 707, 713, (1984), serving to establish that a gross inadequacy of purchase price is insufficient, in and of itself, to support a determination that a subsequent purchaser of foreclosed-upon property did not act in good faith. *In re George*, 264 N.C. App. at 49.

¶ 15    In resolving this aspect of the challenge lodged by KPC Holdings and National Indemnity to the trial court's indicative decision, the Court of Appeals relied upon *In re Ackah*, 255 N.C. App. at 288, for the proposition that, even though a property owner cannot normally be divested of his or her property without sufficient notice, he or she can be deprived of the property in question as the result of a foreclosure sale if he or she had "constitutionally sufficient notice" of the pendency of the foreclosure proceeding and the subsequent purchaser was a good faith purchaser for value for purposes of N.C.G.S. § 1-108. *In re George*, 264 N.C. App. at 52. In the Court of

Appeals' view, *In re Ackah* held that "constitutional due process does not require that the property owner receive *actual* notice" and that, "where notice sent by certified mail is returned 'unclaimed,' due process requires only that the sender must take *some* reasonable follow-up measure to provide other notice where it is practicable to do so." *Id.* at 50 (quoting *In re Ackah*, 255 N.C. App. at 288).

¶ 16    A majority of the Court of Appeals applied these principles to the facts of this case by holding that KPC Holdings was a good faith purchaser for value and that the trial court had erred by vacating the foreclosure sale and subsequent transfer from the trustee to KPC Holdings.[2] *In re George*, 264 N.C. App. at 52.  In concluding that KPC Holdings was entitled to good faith purchaser for value status, the Court of Appeals noted that:

> No record evidence exists that either KPC Holdings or
> National Indemnity had actual knowledge or constructive
> notice of the improper service of the foreclosure notice.  No
> infirmities or irregularities existed in the foreclosure
> record that would reasonably put KPC Holdings or any
> other prospective purchaser on notice that service was
> improper.  The sheriff's return of service indicated that
> personal service was made upon [Ms.] George and that
> substitute service was accomplished for Calmore George by
> leaving copies with [Ms.] George.  KPC Holdings was

---

[2] After determining that, given KPC Holdings' status as a good faith purchaser for value, the trial court had erred by invalidating the deed from the trustee to KPC Holdings, the Court of Appeals noted that it did not need to reach the issue of whether National Indemnity was a good faith purchaser for value as defined by N.C.G.S. § 1-108 in order to necessitate the reversal of the challenged trial court order. *In re George*, 264 N.C. App. 38, 51 (2019).

entitled to rely upon that record in purchasing the property at the foreclosure sale.

*Id* at 50–51. In addition, a majority of the Court of Appeals held that, "[w]hile [Mr.] George did not receive proper Rule 4 notice of the foreclosure sale of the property, as explained above, the Georges did receive constitutionally sufficient notice," noting the fact that the trustee had made multiple attempts to notify the Georges of the pendency of foreclosure proceeding, including attempted personal service, attempted service by certified mail, and e-mail exchanges. *Id.* at 52. Based upon these determinations, the Court of Appeals held that the trial court had abused its discretion by vacating the order authorizing the trustee to conduct a foreclosure sale and the subsequent deeds transferring the property from the trustee to KPC Holdings and from KPC Holdings to National Indemnity. *Id.*

¶ 17    In a separate concurring opinion, Judge Dillon opined that the purchaser at a foreclosure sale need not pay "valuable consideration" in order to be entitled to the benefit of the protections afforded by N.C.G.S. § 1-108 and, on the contrary, merely needed to "believe[ ] in good faith that the sale was properly conducted." *Id*. at 55 (Dillon, J., concurring). Similarly, Judge Dillon noted that a low purchase price did not suffice, standing alone, to support a decision to overturn a foreclosure sale, citing *Swindell*, 310 N.C. at 713, and asserted that nothing in the record tended to show that KPC Holdings had not purchased the property in good faith. *In re George*, 264 N.C. App. at 55.

¶ 18     In a dissenting opinion, Judge Bryant opined that neither KPC Holdings nor National Indemnity qualified as good faith purchasers for value for purposes of N.C.G.S § 1-108. *Id*. at 55–56 (Bryant, J., concurring in part and dissenting in part). In reaching this conclusion, Judge Bryant recognized that a "gross inadequacy of consideration, when coupled with any other inequitable element, even though neither, standing alone, may be sufficient for the purpose, will induce a court of equity to interpose and do justice between the parties." *Id*. at 56 (quoting *Foust v. Gate City Sav. & Loan Ass'n*, 233 N.C. 35, 37 (1950)). According to Judge Bryant, the exceedingly low purchase price at which the property had been purchased from the trustee and the lack of proper notice to the Georges sufficed, when taken in combination, to support the trial court's decision to vacate the underlying foreclosure order and the resulting property transfers. *Id* at 57. In support of her determination that KPC Holdings and National Indemnity had notice of the risk that the notice of foreclosure had not been properly served upon the Georges, Judge Bryant pointed to the fact that, while the record contained adequate evidence relating to the Association's claim of lien against the Georges, "KPC Holdings was on reasonable notice that there were no other liens when it placed a bid of $2,650.22" despite the fact that the property was worth approximately $150,000.00. *Id*. at 56–57. In addition, Judge Bryant noted the existence of "questionable evidence of wrongdoing" on the part of KPC Holdings and National Indemnity and stated that neither party

had satisfied its burden of proving that it was an innocent purchaser for value given that KPC Holdings and National Indemnity "were colleagues, dealt with each other in the past, and both made a substantial profit with their respective conveyances of the property." *Id.* at 57. The Georges noted an appeal to this Court from the Court of Appeals' decision based upon Judge Bryant's dissent.

¶ 19 In seeking to persuade us to overturn the Court of Appeals' decision, the Georges have argued that the Court of Appeals majority had erred by determining that the trial court had abused its discretion by concluding that KPC Holdings and National Indemnity were not good faith purchasers for value entitled to protection pursuant to N.C.G.S. § 1-108.[3] According to the Georges, the "trial court was in the best position to weigh the evidence, determine the credibility of witnesses — including [Ms.] Schoening — and the weight to be given the testimony of the witnesses." In the Georges' view, the information available to KPC Holdings and National Indemnity from an examination of the public records, which included the lack of any deed of trust or other encumbrance applicable to the property other than the Association's claim of lien, and the fact that the Georges did not contest the

___

[3] In addition, the Georges argue that the Court of Appeals had erred by distinguishing between constitutionally sufficient notice and sufficient notice for purposes of N.C.G.S. § 1A-1, Rule 4, and finding that they had received constitutionally sufficient notice of the foreclosure proceeding. In view of our determination that neither KPC Holdings nor National Indemnity were good faith purchasers for value entitled to the protections of N.C.G.S. § 1-108, we need not address the merits of the Georges' notice-related arguments.

foreclosure proceeding, sufficed to put KPC Holdings and National Indemnity on constructive notice that the Georges did not know of the existence of the foreclosure proceeding. In addition, the Georges assert that it was "obvious to the trial court" that the owner of National Indemnity had failed to testify honestly and that an "appellate court should not override a trial court's credibility determination absent an abuse of discretion."

¶ 20      According to the Georges, KPC Holdings and National Indemnity are not entitled to the protections available pursuant to N.C.G.S. § 1-108 given that they did not purchase the property "without notice, actual or constructive, of any infirmity" and had not paid valuable consideration for it in good faith, quoting *Goodson v. Goodson*, 145 N.C. App. 356, 363 (2001). The Georges contend that the available public records, including the deed to their property, showed that the Georges had a St. Croix address and owned their property free and clear of any liens and encumbrances, with the exception of the Association's claim of lien, which amounted to only $204.75. In light of this publicly available information, the Georges claim that KPC Holdings and National Indemnity had ample basis for questioning the sufficiency of the service of the foreclosure notice on the grounds that "[s]omeone who otherwise owns a property free and clear of liens or encumbrances would not allow that property to be sold at a foreclosure sale for less than three thousand dollars unless there was a potential problem, e.g., with service," with this case being

distinguishable from *In re Ackah* on the grounds that KPC Holdings and National Indemnity had failed to either pay valuable consideration or establish that they had acted in good faith.

¶ 21     In seeking to persuade us to uphold the Court of Appeals' decision, KPC Holdings argues that, when a purchaser lacks actual notice of a defect in the underlying foreclosure proceeding, it "may rely on the facial validity of the record in determining that there are no defects in title to the land in question," citing *Goodson*, 145 N.C. App. at 363.   In addition, KPC Holdings asserts that a foreclosure proceeding, including service of process, should be presumed effective when "the return shows legal service by an authorized officer, nothing else appearing," quoting *Harrington v. Rice*, 245 N.C. 640, 642 (1957).  In view of the fact that the return of service completed by Deputy Barnes indicated that the notice of foreclosure had been personally served upon Ms. George, KPC Holdings argues that it "was entitled to rely on the record's facial validity to purchase the Property with the highest bid at the nonjudicial foreclosure sale."  On the other hand, KPC Holdings claims that the Georges' argument that neither KPC Holdings nor National Indemnity are entitled to innocent purchaser for value status "because [the Georges] had too much equity in the Property for which KPC Holdings purportedly bid too little at the sale . . . contravenes applicable precedent."  Finally, KPC Holdings claims that acceptance of the Georges' contention that it and National Indemnity had constructive notice that

the Georges did not know of the existence of the proceeding "would mean that no one could ever bid on real property in a nonjudicial foreclosure proceeding initiated in this State to satisfy a lien constituting a fraction of the property's value" and would "defy the General Assembly's intent behind Chapter 45 of the North Carolina General Statutes and subvert basic economic and free-market principles."

¶ 22        Similarly, National Indemnity argues that it was a good faith purchaser for value such that its title to the property cannot be disturbed by means of an order granting a motion for relief from judgment. National Indemnity asserts that, even if this Court determines that KPC Holdings was not a good faith purchaser entitled to the protections available pursuant to N.C.G.S. § 1-108, "KPC Holdings' designation as a good faith purchaser is irrelevant where National Indemnity Group was a subsequent good faith purchaser that paid valuable consideration" and National Indemnity "took no part in the foreclosure sale and purchased the property for a $150,000 note secured by a recorded deed of trust." In National Indemnity's view, the Georges' argument "ask[s] bidders at foreclosure sales to perform greater due diligence than the foreclosing entity and the Sheriff." Finally, National Indemnity contends that N.C.G.S. § 1-108, as interpreted in *In re Ackah*, "constrains the court from undoing good faith conveyances" and claims that the Georges have failed to direct the Court's attention to any instance in which a subsequent conveyance was invalidated in the absence of an allegation and proof of fraud.

N.C.G.S. § 1A-1, Rule 60(b), allows a party to obtain relief from a final judgment or order on a number of different grounds, including instances in which "[t]he judgment is void" or "[a]ny other reason justifying relief from the operation of the judgment" exists. N.C.G.S § 1A-1, Rule 60(b)(4), (6) (2019). The authority granted to a trial judge by N.C.G.S. § 1A-1, Rule 60(b) "is equitable in nature and authorizes the trial court to exercise its discretion in granting or denying the relief sought." *Howell v. Howell*, 321 N.C. 87, 91 (1987) (citing *Kennedy v. Starr*, 62 N.C. App. 182 (1983)). "[A] motion for relief under Rule 60(b) is addressed to the sound discretion of the trial court and appellate review is limited to determining whether the court abused its discretion," *Sink v. Easter*, 288 N.C. 183, 198 (1975), with such an abuse of discretion having occurred only when the trial court's determinations are "manifestly unsupported by reason," *Davis v. Davis*, 360 N.C. 518, 523 (2006) (quoting *Clark v. Clark*, 301 N.C. 123, 129 (1980)). As a result, "[a] ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Davis*, 360 N.C. at 523 (quoting *White v. White*, 312 N.C. 770, 777 (1985)).

N.C.G.S. § 1-108 provides that

> [i]f a judgment is set aside pursuant to Rule 60(b) or (c) of the Rules of Civil Procedure and the judgment or any part thereof has been collected or otherwise enforced, such restitution may be compelled as the court directs. Title to property sold under such judgment to a purchaser in good faith is not thereby affected.

N.C.G.S. § 1-108 (2019). A "purchaser in good faith" or an "innocent purchaser" is a person who "purchases without notice, actual or constructive, of any infirmity, and pays valuable consideration and acts in good faith." *Morehead*, 262 N.C. at 338 (quoting *Lockridge v. Smith*, 206 N.C. 174, 181 (1934)). An innocent purchaser lacks notice of any infirmity or defect in the underlying sale when "(a) he has no actual knowledge of the defects; (b) he is not on reasonable notice from recorded instruments; and (c) the defects are not such that a person attending the sale exercising reasonable care would have been aware of the defect[s]." *Swindell*, 310 N.C. at 714–15 (quoting Osborne, Nelson & Whitman, Real Estate Finance Law § 7.20 (1st ed. 1979)). "The burden of proof of the 'innocent purchaser' issue is upon those claiming the benefit of this principle. . . ." *Morehead*, 262 N.C. at 338 (citing *Hughes v. Fields*, 168 N.C. 520 (1915)).

Although this Court has clearly held that "mere inadequacy of the purchase price realized at a foreclosure sale, standing alone, is not sufficient to upset a sale, . . . where there is an irregularity in the sale, gross inadequacy of purchase price may be considered on the question of the materiality of the irregularity." *Foust*, 233 N.C. at 37. In *Williams v. Chas. F. Dunn & Sons Co.*, 163 N.C. 206, 213 (1913), the purchaser at a foreclosure sale bought the tract of property in question at approximately one-eighth of its actual value following a sale that was affected by several deficiencies and irregularities. In that instance, we determined that the discrepancy between the

purchase price and the value of the relevant property was "calculated to cause surprise and to make one exclaim: 'Why, he got it for nothing! There must have been some fraud or connivance about it,' " *id.* (quoting *Worthy v. Caddell*, 76 N.C. 82, 86 (1877)), and held that "[s]uch an apparently unfair sale should not be permitted to stand unless the strict right of the purchaser, under the law, requires us to sustain it," *Williams*, 163 N.C. at 213.

¶ 26    Similarly, in *Swindell*, 310 N.C. 707, the prior property owners challenged the validity of the sale of the relevant property in connection with a foreclosure proceeding by alleging that the sale had resulted from an upset bid of $47,980.00 in spite of the fact that the property had a fair market value that was closer to $70,000.00. In addition, the prior property owners argued that the trustee had failed to properly conduct the resulting foreclosure sale given that the trustee had sold the multi-tract parcel as a single entity even though higher bids would have resulted from a decision to sell each tract separately. *Id* at 713–14. In analyzing this set of circumstances, we stated that

> [a]llegations of inadequacy of the purchase price realized at a foreclosure sale which has in all other respects been duly and properly conducted in strict conformity with the power of sale will not be sufficient to upset a sale. *Foust* stands for the proposition that it is the materiality of the irregularity in such a sale, not mere inadequacy of the purchase price, which is determinative of a decision in equity to set the sale aside. Where an irregularity is first alleged, gross inadequacy of purchase price may then be

considered on the question of the materiality of the irregularity.

*Id.* at 713 (citations omitted), before holding that the "defect in [the] foreclosure sale render[ed] the sale voidable," *id.* at 714, and stating that the purchaser of the property was not entitled to good faith purchaser for value status given that he or she "had notice of the significant defect in the proceeding" based upon the fact that the "advertisement of sale itself disclosed separate debts secured by two separate deeds of trust on two separate tracts of land," *id.* at 715.

¶ 27    A careful analysis of our prior decisions relating to the issue of when a party to a foreclosure sale is and is not entitled to good faith purchaser for value status demonstrates that, in order for a subsequent purchaser to be denied access to the benefits that are otherwise available to good faith purchasers for value, the record must show the existence of some additional irregularity or defect in the proceedings leading to the challenged foreclosure sale in addition to an inadequacy of the price that was paid by the purchaser.  Although KPC Holdings and National Indemnity argue that no such additional procedural defect exists in this instance given that they were entitled to rely on the facial validity of the return of service completed by Deputy Barnes, which indicated that service had been effectuated upon the Georges by personal service upon Ms. George and that the trial court had no justification for concluding that either subsequent purchaser had actual or constructive notice of any other irregularity or defect in the sale, we do not find these arguments persuasive.

¶ 28    In the order granting the motion for relief from judgment filed by KPC Holdings and National Indemnity, the trial court found as a fact that

> 6.   The Property was not encumbered by any other liens or mortgages at the time the Association conducted the foreclosure sale.
>
> 7.   . . . [T]he January 12, 2017 non-judicial foreclosure sale occurred without proper service on Mr. George.
>
> 8.   KPC Holdings purchased the Property for $2,650.22 at the January 12, 2017 non-judicial foreclosure sale.
>
> . . . .
>
> 10.  The respective principals of KPC Holdings and National Indemnity Group are colleagues that have known each other for several years and have had transactions in the past. . . .
>
> 11.  The consideration National Indemnity Group provided to KPC Holdings for the conveyance of the Property was a $150,000.00 promissory note. . . .
>
> 12.  National Indemnity Group planned to sell the Property for $240,000.00.

According to the record developed before the trial court upon which these findings of fact rested, Ms. Schoening testified that she had viewed the "special proceedings file" in this case, which indicated that the property was not encumbered by any lien or mortgage other than the Association's claim of lien before agreeing to purchase the property from KPC Holdings. At the conclusion of the hearing, the trial court stated that

> I have a hard time believing [Ms. Schoening]. When she was asked questions about the terms of this Note she couldn't—she couldn't remember. I don't believe that one minute. It has, in fact, cast[ ] a cloud over her entire testimony. I'm not sure if I would believe her if she said it were daylight right now outside. So this notion that she's innocent, this notion that she's not being treated fairly, I have a hard time swallowing that pill.

In addition, the trial court noted that it did not believe Ms. Schoening's testimony regarding the nature and extent of her relationship with the owner of KPC Holdings or her statement that she could not recall how many properties she had purchased. In reaching this conclusion, the trial court opined that, "[w]hen it was an answer that would potentially benefit her it was right out," but when the answer would not benefit her, Ms. Schoening would claim an inability to remember the relevant facts.

A careful examination of the trial court's findings of fact and the evidence contained in the record satisfies us that the trial court did not abuse its discretion in determining that KPC Holdings and National Indemnity were not entitled to good faith purchaser for value status. In spite of the fact that the trial court did not explain in so many words why it concluded that KPC Holdings and National Indemnity did not qualify as good faith purchasers for value entitled to protection pursuant to N.C.G.S. § 1-108, the record provides ample support for this conclusion.

Although the return of service completed by Deputy Barnes indicated that Mr. George had been served when a copy of the notice of foreclosure was delivered to a person of suitable age and discretion at his "dwelling house or usual place of abode,"

the deed by which the Georges obtained title to the property showed that they resided in St. Croix. In addition, the affidavit that the trustee executed for the purpose of establishing that valid service had been effectuated upon the Georges indicated that, even though copies of the notice of foreclosure had been sent to them using both regular and certified mail, return receipt requested, at their St. Croix address, neither of these mailings had reached their designated recipients. Thus, there was ample basis upon the face of the record for questioning whether the delivery of a copy of the notice of foreclosure to someone other than Mr. George at the Charlotte property constituted valid service upon Ms. George.

¶ 31 In addition, an inspection of the information available on the public record showed that the Georges owned the property free and clear of any encumbrance other than the $204.75 amount that they owed to the Association. After testifying that she was familiar with the foreclosure process and that she had purchased property at foreclosure sales "[m]any times" in the past, Ms. Schoening asserted that she typically performed online research relating to the relevant properties before agreeing to purchase them in foreclosure proceedings, with her research having typically included an examination of the relevant property tax and prior foreclosure records, and that she had conducted such research prior to purchasing the Georges' property from KPC Holdings. In addition, Ms. Schoening acknowledged that she could have gleaned from the record that the Georges had previously purchased the home for more

than $100,000.00 and had allowed it to be foreclosed upon without opposition based upon an apparent failure to pay the relatively small amount of $204.75. Finally, Ms. Schoening testified that the owner of KPC Holdings was someone whom she considered a "colleague," that she had periodically purchased property that had been foreclosed upon from KPC Holdings, that she considered the owner of KPC Holdings to be a "respected real estate professional," and that it was possible that she had sold properties to him in the past but she could not recall. As we understand the record, the testimony before the trial court clearly suggests that a grossly inadequate price had been paid for the property at the hearing and that KPC Holdings and National Indemnity had a history of dealing in foreclosed upon properties together. The nature of the prior dealings between KPC Holdings and National Indemnity, the fact that the Georges appeared to have "lost" the property over $204.75, and Ms. Schoening's lack of credibility provide further indication that KPC Holdings and National Indemnity had reason to question the sufficiency of the notice that the Georges had received.

¶ 32 As a result, a careful review of the record shows that the trial court had a rational basis for concluding that KPC Holdings paid a grossly inadequate price to purchase the property from the trustee and that both KPC Holdings and National Indemnity had ample reason to question the sufficiency of the notice of the pendency of the foreclosure proceeding that the Georges had received. In light of this state of

the record, we are unable to say that the trial court's decision to find that KPC Holdings and National Indemnity were not good faith purchasers for value entitled to the protections enunciated in N.C.G.S. § 1-108 lacked any reasonable basis. As a result, we hold that, while the Court of Appeals correctly affirmed the trial court's determination that proper service of process had not been effectuated upon Mr. George, *In re George*, 264 N.C. App. at 47, it erred by concluding that the trial court had abused its discretion by determining that KPC Holdings and National Indemnity were not good faith purchasers for value entitled to the protections available pursuant to N.C.G.S. § 1-108. On the other hand, however, the trial court did err by failing to consider the issue of whether, given its decision to invalidate the results of the foreclosure proceeding and the resulting property transfers between the trustee, KPC Holdings, and National Indemnity, an order requiring the payment of restitution as authorized by N.C.G.S. § 1-108 should have been entered. As a result, for all of these reasons, the decision of the Court of Appeals is affirmed, in part, and reversed, in part, and this case is remanded to the Court of Appeals for further remand to the Superior Court, Mecklenburg County, for consideration of the issue of whether an award of restitution as authorized by N.C.G.S. § 1-108 would be appropriate and the entry of an appropriate order embodying its resolution of that issue.

AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED.