We hold that the HOA's notice to Ms. Ackah of the proceeding before the Clerk did not satisfy the requirements of Rule 4 of our Rules of Civil Procedure. Therefore, we conclude that Ms. Ackah was entitled to some form of relief from the Clerk's order which had authorized the public sale of her Property.
However, the superior court was constrained by N.C. Gen. Stat. § 1-108 from granting a form of relief to Ms. Ackah which affected the title of the Jones Family's-a good faith purchaser at the judicial sale ordered by the Clerk-to the Property. That is, by enacting G.S. 1-108, the General Assembly has chosen to favor the interests of the Jones Family over that of Ms. Ackah in the Property, where Ms. Ackah is otherwise entitled to relief from the order pursuant to Rule 60 of our Rules of Civil Procedure. G.S. 1-108 is not unconstitutional as applied to Ms. Ackah in this case since the HOA's notice to Ms. Ackah of the proceeding before the Clerk was constitutionally sufficient, notwithstanding that she did not receive actual notice or notice which complied with Rule 4.
*286 Therefore, the type of relief available to Ms. Ackah from the Clerk's order was limited to restitution from the HOA. See N.C. Gen. Stat. § 1-108 (2015). Accordingly, we affirm in part and reverse and remand in part.
II. Background
Addison Reserve at the Park at Perry Creek is a residential planned community subject to the Planned Community Act codified *796 in Chapter 47F of our General Statutes. The Perry Creek planned community is governed by the HOA, which is empowered to assess dues and attach a lien to any Perry Creek home if the owner becomes delinquent in paying HOA dues. See N.C. Gen. Stat. § 47F-3-116 (2015).
In 2005, Ms. Ackah purchased the Property, financing almost all of the purchase price with a loan secured by the Property. In 2012, Ms. Ackah moved to Africa, leasing her home during her absence. She did not inform the HOA of her move. She had her mail forwarded to her uncle's home in South Carolina.
In 2014, Ms. Ackah fell behind on her HOA dues. The HOA mailed several notices to the Property addressed to Ms. Ackah regarding the delinquency, all of which were forwarded to Ms. Ackah's uncle in South Carolina.
The HOA commenced foreclosure proceedings to enforce its statutory lien against the Property to recover the delinquent dues. The HOA sent certified letters addressed to Ms. Ackah to her mother's and uncle's addresses, notifying Ms. Ackah of the hearing set before the Clerk. These letters, however, were returned "unclaimed." The HOA then posted a notice of the hearing on the front door of the Property. Although the HOA had an email address for Ms. Ackah, the HOA did not notify Ms. Ackah by email of the proceeding to enforce its lien.
A hearing was held before the Clerk. Ms. Ackah was not represented at the hearing and claims that she never received actual notice of the hearing.
The Clerk ordered the Property sold to satisfy the HOA lien. The sale of the Property was held, and the Jones Family was the high bidder, with a bid of $2,708.52. In early 2015, the Property was deeded to the Jones Family, subject to any lien superior to the HOA's lien, which included the lien securing Ms. Ackah's mortgage.
Shortly after the sale, Ms. Ackah first learned of the proceeding and the public sale from her tenant after her tenant received a notice to vacate the Property from the Jones Family. Upon learning of the sale from her tenant, Ms. Ackah filed a motion in superior court pursuant to *287 Rule 60 for relief from the Clerk's order which had authorized the public sale of her Property. The superior court granted Ms. Ackah's Rule 60 motion and ordered that the sale to the Jones Family be set aside, thus restoring title to Ms. Ackah. The Jones Family has timely appealed.
III. Analysis
The superior court's 30 December 2016 order, which is the subject of this appeal, essentially did two things: it (1) stated that Ms. Ackah was entitled to relief under Rule 60(b) from the Clerk's order which had authorized the sale of her Property, and (2) ordered relief to Ms. Ackah by setting aside the sale to the Jones Family, thereby restoring title to Ms. Ackah. We address each issue in turn.
A. The Superior Court Was Authorized To Grant Relief From the Clerk's Order, Pursuant to Rule 60(b)
We hold that the superior court did not err in concluding that Ms. Ackah was entitled to relief from the Clerk's order based on the HOA's failure to use "due diligence" to notify her of the proceeding as required by Rule 4 of our Rules of Civil Procedure. In order to enforce its statutory lien, the HOA was required to give Ms. Ackah notice of the hearing before the Clerk in a form which satisfied Rule 4. See N.C. Gen. Stat. § 47F-3-116 (c), (f). Rule 4 requires the use of "due diligence" in providing notice. N.C. Gen. Stat. § 1A-1, Rule 4 (2015).
We hold that in this case, the HOA did not use "due diligence" as required by Rule 4. Specifically, the HOA had Ms. Ackah's email address. The HOA attempted service by certified mail. The HOA had reason to know that Ms. Ackah was not residing at the Property as the HOA sent those letters to Ms. Ackah's mother and uncle. When the notice letters came back "unclaimed," Rule 4 due diligence required that the HOA at least attempt to notify Ms. Ackah directly through the email address it had for her rather than simply resorting to posting a notice on the Property. See Chen v. Zou , --- N.C. App. ----, ----, 780 S.E.2d 571, 574 (2015) (due diligence requires emailing to a known email address before resorting to service by publication).
*797 And since the HOA failed to comply with Rule 4 in providing notice to Ms. Ackah, Ms. Ackah was entitled to relief from the Clerk's order pursuant to Rule 60.
B. The Superior Court Erred By Granting Ms. Ackah Any Form of Relief Which Would Affect the Jones Family's Title
We hold that N.C. Gen. Stat. § 1-108 restricted the superior court in this case from granting Ms. Ackah any relief which affected the Jones Family's title in the Property.
*288 The plain language of N.C. Gen. Stat. § 1-108 states that a court setting aside an order pursuant to Rule 60 may order relief in the form of restitution, but that the court cannot order any relief which affects the title to property which has been sold to a good faith purchaser pursuant to the order being set aside:
If a judgment is set aside pursuant to Rule 60(b) or (c) of the Rules of Civil Procedure and the judgment or any part thereof has been collected or otherwise enforced, such restitution may be compelled as the court directs. Title to property sold under such judgment to a purchaser in good faith is not thereby affected....
N.C. Gen. Stat. § 1-108.
We note that N.C. Gen. Stat. § 1-108 may be unconstitutional as applied if the property owner being divested of her property has not received notice which is at least constitutionally sufficient. Our Supreme Court has held that a statute which allowed for the tax sale of a property without any attempted notice to the taxpayer/owner except by posting and publication was unconstitutional as applied, stating that the process "offends the fundamental concept of due process of law." Henderson County v. Osteen , 292 N.C. 692, 708, 235 S.E.2d 166, 176 (1977) (setting aside a tax sale of taxpayer's property where taxpayer did not receive notice which was constitutionally sufficient).
Here, there is no evidence that Ms. Ackah received actual notice or other notice sufficient under Rule 4. However, based on jurisprudence from the United States Supreme Court, we must conclude that the attempts by the HOA to notify Ms. Ackah were constitutionally sufficient. Specifically, a party need not use "due diligence" under the Constitution, but rather, as the United States Supreme Court held, notice is "constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent[.]" Jones v. Flowers , 547 U.S. 220, 220, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006). The Court explained that constitutional "[d]ue process does not require that the property owner receive actual notice[.]" Id. at 226, 126 S.Ct. 1708 (emphasis added). For instance, where notice sent by certified mail is returned "unclaimed," due process requires only that the sender must take some reasonable follow-up measure to provide other notice where it is practicable to do so. Id. The Court specifically held that where the owner no longer resides at the property, due process is satisfied if the notice is posted on the front door of the property, as it is reasonable that the owner's tenant would notify the owner of the posting:
*289 [A] reasonable followup measure[ ], directed at the possibility that [the owner] had moved as well as that he had simply not retrieved the certified letter, would have been to post notice on the front door, or to address otherwise undeliverable mail to "occupant." ... Either approach would increase the likelihood that the owner would be notified that [s]he is about to lose [her] property[.] ... It is [ ] true in the case of an owner who has moved: Occupants who might disregard a certified mail slip not addressed to them are less likely to ignore posted notice[.] ... [T]here is a significant chance the occupants will alert the owner, if only because a change in ownership could well affect their own occupancy.
Id. at 235, 126 S.Ct. 1708.
In the present case, the HOA posted a notice on the Property's front door after the HOA's certified letters were unclaimed. Therefore, the HOA's notice was constitutionally sufficient under Jones , notwithstanding that the notice did not satisfy the "due diligence" requirement of Rule 4. We note that the HOA did even more to notify Ms. Ackah than posting the notice on the Property: the HOA sent several letters by regular mail to Ms. Ackah indicating its intent to enforce the lien. Id. at 234, 126 S.Ct. 1708 *798 (holding that notice by regular mail is reasonable). It is certainly reasonable to assume that Ms. Ackah would reach out to her uncle where she had instructed her regular mail to be sent about any mail that had, in fact, been sent to her.
Accordingly, since the notice was constitutionally sufficient in this case, it is our duty to follow the policy decision made by our General Assembly, as set forth in N.C. Gen. Stat. § 1-108, which would favor the interests of the Jones Family, as a good faith purchaser at a judicial sale, ahead of the interests of Ms. Ackah in the Property. We note that the General Assembly's policy decision favoring the Jones Family is rational because it encourages higher bids at judicial sales, as explained by our Supreme Court in Sutton v. Schonwald , 86 N.C. 198, 202-04 (1882), and other opinions which are explained more fully below. We note that N.C. Gen. Stat. § 1-108 does not leave Ms. Ackah without a remedy. Indeed, in this case, N.C. Gen. Stat. § 1-108 allows Ms. Ackah to seek restitution from the HOA.
The dissent relies on a 1990 opinion from our Court to suggest that the superior court did have the authority to affect the Jones Family's title when it set aside the Clerk's order. Specifically, in Cary v. Stallings , *290 a panel of our Court held that N.C. Gen. Stat. § 1-108 allows a court to affect the title of property already sold when granting Rule 60 relief "if the court deems it necessary in the interest of justice." Cary v. Stallings , 97 N.C. App. 484, 487, 389 S.E.2d 143, 145 (1990).[1] However, our Court did not cite to any Supreme Court precedent in Stallings , and its holding otherwise conflicts with the plain language of N.C. Gen. Stat. § 1-108 and with precedent from our Supreme Court which has interpreted the statutory language contained in N.C. Gen. Stat. § 1-108. Therefore, we hold that we are not bound by Stallings but rather by North Carolina Supreme Court precedent referenced below.
Our Supreme Court has not had occasion to address the language in N.C. Gen. Stat. § 1-108 since our Court decided Stallings in 1990. However, prior to 1990, our Supreme Court stated on a number of occasions that where a court sets aside a judgment, the court may not enter an order which affects the title to property sold under that judgment to a good-faith purchaser, at least so long as the debtor received constitutionally adequate notice of the proceeding. For instance, in 1920, our Supreme Court considered a predecessor to N.C. Gen. Stat. § 1-108, a statute which stated as follows:
... and if the defense be successful, and the [prior] judgment ... shall have been collected, or otherwise enforced, such restitution may thereupon be compelled as the Court may direct, but title to property sold under such judgment to a purchaser in good faith shall not be thereby affected.
White v. White , 179 N.C. 592, 599, 103 S.E. 216, 220 (1920) (emphasis added). In White , the defendant's land was sold at a judgment execution sale to a good-faith purchaser, allegedly without actual notice to the defendant. Our Supreme Court held that the defendant was not entitled to the return of his property, noting that "the title to the land was acquired by the plaintiff as a bona fide purchaser at the sale under execution, and cannot be disturbed ." Id. (emphasis added). The Court held that the notice to the defendant was not constitutionally defective, notwithstanding the fact that he did not receive actual notice. Id. at 599-600, 103 S.E. at 220.
In 1926, our Supreme Court considered the statutory predecessor to N.C. Gen. Stat. § 1-108, specifically focusing on the line from the statute:
*291 "Title to property sold under such judgment to a purchaser in good faith is not hereby affected." Foster v. Allison Corp. , 191 N.C. 166, 170, 131 S.E. 648, 650 (1926). In that case, the defendants sought to have a judgment set aside which had resulted in the sale of their property to a third party: "Counsel for defendants earnestly contends that in setting aside a judgment under [the precursor to N.C. Gen. Stat. § 1-108 ], a bona fide purchaser may obtain title and property be taken without [the defendants having their] day in court[.]"
*799 Id. at 170, 131 S.E. at 650-51. Our Supreme Court held that the statute did not violate the defendants' due process rights, as the court had jurisdiction over the property. Id.
In 1897, our Supreme Court stated that, based on a statutory predecessor to N.C. Gen. Stat. § 1-108, the title to real estate purchased at a judicial sale cannot be affected where a court determines later that there was some irregularity in the judgment. Harrison v. Hargrove , 120 N.C. 96, 106, 26 S.E. 936, 939-40 (1897). In its decision, our Supreme Court quoted England v. Garner , 90 N.C. 197 (1884), as follows:
" 'It is well settled principle and authority, that where it appears by the record that the Court had jurisdiction of the parties and the subject-matter of an action the judgment therein is valid, however irregular it may be, until it shall be reversed by competent authority; and although it be reversed, the purchaser of real estate or other property at a sale made under and in pursuance of such judgment, while it was in force and while it authorized the sale, will be protected....' " [Where] "the judgment is regular on its face, a purchaser of property under such a judgment or decree must be protected in his purchase, even though the judgment or decree be afterwards set aside on the ground that in point of fact service of summons had not been made[.]"
Hargrove , 120 N.C. at 105-06, 26 S.E. at 939 (emphasis in original).
On a number of occasions, our Supreme Court has stated that the policy behind the statutory language now found in N.C. Gen. Stat. § 1-108 is to encourage higher bids at judicial sales and to protect the integrity of title to property:
The title acquired at a judicial sale of lands made by a court of competent jurisdiction, is not rendered invalid by reason of the reversal of the decree for irregularity in the proceedings, of which the purchaser could have no notice.
*292 ....
A contrary doctrine would be fatal to judicial sales and values of title derived under them, as no one would buy at prices at all approximating the true value of property, if he supposed that his title might, at some distant day, be declared void, because of some irregularity in the proceeding altogether unsuspected by him[.]
....
Under the operation of this rule, occasional instances of hardship [ ] may occur, but a different one would much more certainly result in mischievous consequences, and the general sacrifice of property sold by order of the courts. Hence it is, that a purchaser who is no party to the proceeding, is not bound to look beyond the decree [allowing for the property to be sold], if the facts necessary to give the court jurisdiction appear on the face of the proceedings. If the jurisdiction has been improvidently exercised, it is not to be corrected at his expense, who had a right to rely upon the order of the court as an authority emanating from a competent source-so much being due to the sanctity of judicial proceedings.
Sutton v. Schonwald , 86 N.C. at 202-04 ; see also Bolton v. Harrison , 250 N.C. 290, 298, 108 S.E.2d 666, 671 (1959) ("Necessarily, purchasers of property, especially land, must have faith in and place reliance on the validity of judicial proceedings."); Crockett v. Bray , 151 N.C. 615, 617, 66 S.E. 666, 667 (1910)[2] ; Lawrence v. Hardy , 151 N.C. 123, 129, 65 S.E. 766, 769 (1909)[3] ;
*800 Herbin v. Wagoner , 118 N.C. 656, 661, 24 S.E. 490, 491 (1896).
*293 In the present case, the Clerk entered an order detailing the validity of the lien on Ms. Ackah's property and stating that service was accomplished on Ms. Ackah "as provided by law." There was nothing in the order which would have alerted the Jones Family of any irregularities in the proceeding. They made their bid in good faith. And the application of N.C. Gen. Stat. § 1-108 is not unconstitutional as applied to Ms. Ackah in this case, as Ms. Ackah was afforded constitutionally sufficient notice. Therefore, although Ms. Ackah is entitled to relief from the Clerk's order based on the HOA's failure to use "due diligence" to notify her of the proceeding under Rule 4, N.C. Gen. Stat. § 1-108 limits the type of relief available to her in order to protect the interests of a good-faith purchaser of the Property; here, the Jones Family.
Even assuming that we are bound by our Court's 1990 decision in Stallings , reversal of the superior court's order affecting the Jones Family's interest in the Property is still warranted. Specifically, the superior court based its order on its determination that the interests of justice required that the sale be set aside primarily "due to the Property being sold at a substantially low price[.]" However, this determination is not supported by the superior court's own findings or the evidence. Specifically, the court based this conclusion on its finding that "[t]he purchase price [at the judicial sale] of $2,708.52 was significantly low, given Ackah's purchase price of $123,000 in 2005." The superior court ignored the fact that the Jones Family bought the Property subject to Ms. Ackah's first mortgage, which the court found was in the amount of $117,587.00 when it originated. And there is otherwise no finding regarding the actual value of the Property or the amount owed on the first mortgage at the time of the judicial sale. Therefore, the findings simply do not support the court's determination that the price paid by the Jones Family was "substantially low."
IV. Conclusion
The superior court properly determined that Ms. Ackah was entitled to some form of relief pursuant to Rule 60, as she did not receive notice which satisfied Rule 4 of the proceeding before the Clerk. However, because Ms. Ackah received constitutionally sufficient notice, the relief available to her was limited by N.C. Gen. Stat. § 1-108, which favors the rights of the Jones Family in the Property over that of Ms. Ackah. Therefore, we affirm in part, reverse in part and remand the superior court's 30 December 2015 order; and we reverse the 30 December 2015 order entered by the assistant clerk returning possession of the Property to Ms. Ackah. On remand, the superior court may enter an order not inconsistent with this opinion, which may include, for example, relief *294 for Ms. Ackah in the form of restitution from the HOA, as authorized by N.C. Gen. Stat. § 1-108.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Judge STROUD concurs.
Judge MURPHY dissents by separate opinion.

Stallings has been relied upon by panels of our Court in unpublished opinions. See County of Jackson v. Moor , 236 N.C. App. 247, 765 S.E.2d 122 (2014) (unpublished); Zheng v. Charlotte Prop. , 226 N.C. App. 200, 739 S.E.2d 627 (2013) (unpublished).

Our Supreme Court in Crockett recognized the General Assembly's purpose in enacting statutes like N.C. Gen. Stat. § 1-108 as follows: "The evident trend of enlightened legislation is to remove, before sale, all defects of title to property sold under judicial process. Its object is to have property sold under process of the courts, bring the highest price, and, as far as possible, to eliminate speculation in defective titles to property sold by its process. The courts have been liberal in construing this remedial legislation." Crockett , 151 N.C. at 617, 66 S.E. at 667.

Our Supreme Court in Lawrence reiterated the law: "Our law is properly solicitous of the rights of such a purchaser; and, while they are affected by the existence of certain defects apparent in the record, numerous and well-considered decisions with us sustain the position that only those defects which are jurisdictional in their nature are available as against his title." Lawrence , 151 N.C. at 129, 65 S.E. at 769.