IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-90

No. COA21-205

Filed 15 February 2022

Mecklenburg County, No. 18 CVD 495

COUNTY OF MECKLENBURG, A Body Politic and Corporate, Plaintiff,

v.

HELEN BARBARA RYAN, UNKNOWN SPOUSE OF HELEN BARBARA RYAN, and CITY OF CHARLOTTE, Lienholder, Defendants.

Appeal by Plaintiff from Order entered 20 October 2020 and cross-appeal by Defendant from order entered 20 October 2020 by Judge Paulina N. Havelka in Mecklenburg County District Court. Heard in the Court of Appeals 30 November 2021.

*C. Ashley Lamm, for County of Mecklenburg, Plaintiff.*

*Lord Law Firm, PLLC, by Harrison A. Lord, for Helen Barbara Ryan, Defendant.*

*No brief filed on behalf of City of Charlotte, Defendant-Lienholder.*

*Offit Kurman, P.A., by Amy P. Hunt and Robert McNeill, for Jacob Belk, Third-Party Appellee.*

WOOD, Judge.

¶ 1     Plaintiff, County of Mecklenburg, A Body Politic and Corporate ("Mecklenburg County") appeals an order setting aside an entry of default and a default judgment. Defendant Helen Ryan ("Ryan") cross appeals from the order, in which the trial court

granted Ryan's motion to set aside a judgment of confirmation, but denied her motion to set aside the commissioners' deed. After careful review of the record and applicable law, we affirm the order of the trial court in part and reverse in part.

## I.    Factual and Procedural Background

Ryan has been confined to a wheelchair since 1989 and legally blind since 1992. In 2018, Ryan owned and resided at 4810 Drakestone Court, Charlotte, North Carolina ("the Property").[1] On January 8, 2018, Mecklenburg County, through its counsel, Richard Kania of The Kania Law Firm, instituted a civil action to foreclose on the Property for past due real property taxes owed by Ryan for the years 2014, 2015, and 2016. While this action was ongoing, Ryan's 2017 property taxes and interest for 2017 property taxes became delinquent.

On January 8, 2018, a civil summons was issued against Ryan, but was not served. An alias and pluries summons was issued on April 17, 2018. Although Mecklenburg County attempted to serve Ryan personally, it was unsuccessful in doing so. When an officer from the Sheriff's Department attempted to serve Ryan at the Property, he reported the Property "appear[ed] vacant." Thereafter, Mecklenburg County tried serving Ryan via certified mail and by designated delivery service.

---

[1] Defendant City of Charlotte had a lien on the Property which was later satisfied by the proceeds from the foreclosure sale. The City of Charlotte did not file a notice of appeal and is not presently before this Court.

Service was unsuccessful. Although "Ryan had previously informed [Mecklenburg] County (in a different context) that because of her disabilities, it can be difficult for her to access mail, and that the best way to reach her was via email," Mecklenburg County did not attempt to email Ryan.

¶ 4 Following its failed attempts to serve Ryan by personal service, Mecklenburg County served Ryan by publication, which was completed on May 22, 2018. On August 1, 2018, Mecklenburg County filed an "Affidavit of Jurisdiction and Failure to Plead" and a certificate of taxes due, which contained a statement of the amount of outstanding taxes Ryan allegedly owed. The certificate of taxes due stated that Ryan owed $20,775.33. Mecklenburg County also filed a motion for entry of default and a motion for default judgment on August 1, 2018.[2] Entry of default and a default judgment were entered against Ryan that same day.

¶ 5 Mecklenburg County subsequently filed a notice of sale to foreclose on the Property on September 18, 2019. The notice of sale was published on September 4, 2018, and September 11, 2018. On September 12, 2018, Ryan "became aware of the foreclosure action and immediately emailed Neal Dixon, the Mecklenburg County Tax Collector/Department Director ("Mr. Dixon") regarding the unpaid taxes." Ryan

[2] Counsel for Mecklenburg County signed the motion for entry of default on July 24, 2018. However, the file stamp indicates that the motion for entry of default was filed on August 1, 2018. Counsel signed the motion for default judgment on July 2, 2018, but the file stamp indicates that this motion was filed on August 1, 2018.

emailed the Tax Collector approximately three times but did not receive a response. On September 14, 2018, Ryan called the Mecklenburg County Tax Office and was given a payoff amount of $21,438.25.[3] Ryan's affidavit states that she immediately paid this amount over the phone and was provided with confirmation codes confirming the payment. The payoff amount of $21,438.25 was deducted from Ryan's bank account that same day.[4]

¶ 6        According to Deputy Tax Director Frank Wirth, personnel from the Tax Office called Ryan fourteen times between November 10, 2015 and September 11, 2017 to discuss her delinquency. These phone calls went unanswered. In addition to the phone calls, personnel from the Tax Office completed two field visits, posted two delinquency notices, posted seven advertisements of the delinquencies in the Charlotte Observer, posted two notices of delinquency online, and sent five set-off debt submissions to the North Carolina Department of Revenue. The Tax Office never received a response from Ryan during that time. The Deputy Tax Director conceded that Ryan

---

[3] Although Ryan's payment of $21,438.25 exceeded the amount stated on the certificate of taxes due, Mecklenburg County argues that this was not the full amount Ryan owed. Ryan's payment also exceeded the amount stated in the default judgment. Mecklenburg County conceded at oral argument before this Court that it was unaware of the exact total Ryan owed at the time she made the payment.

[4] Mecklenburg County contends that Ryan did not exercise her right of redemption because there is no evidence in the record that the County "received" or "accepted" her "partial" payment. The County further argues that Ryan did not exercise her right of redemption because the payment was refunded to her.

attempted to make a payment on her bills in the amount of $21,438.25 by use of the Mecklenburg County Tax Office's 'E-Pay' feature. . . . The use of this service for payment . . . does not provide any person-to-person contact. . . . Furthermore, the E-Pay payment method only provides confirmation of a payment submission; it does not provide either (i) confirmation of acceptance of the payment by the Tax Collector, nor (ii) any indication that the payment represents a payment in full that would update the record and remove the tax lien.

¶ 7        Mecklenburg County conceded at oral argument before this Court that Ryan made a payment of $21,438.25 and that the County did not refund the payment to Ryan until approximately eight to ten weeks later. Although Ryan made the payment, the County proceeded with the foreclosure sale anyway. Mecklenburg County filed a report of foreclosure sale on September 18, 2018; however, there were multiple upset bids. Jacob Belk ("Belk") made the final upset bid on October 15, 2018.

¶ 8        On October 31, 2018, Belk went to the Property and knocked on the door. Ryan did not answer the door, but Belk "stayed at the door and explained he was the new owner of the property and eventually left." "Sometime in early November 2018," Ryan posted a note on the front door of the Property, stating "if this [is] about the taxes, they were paid in full before the sale and the house still belongs to [Ryan]." Ryan also contacted the Kania Law Firm to inform them that she "has paid taxes to the County." On November 28, 2018, an employee of the Kania Law Firm responded to Ryan via email and informed her that her "right of redemption no longer exist[ed]."

¶ 9         On December 4, 2018, Mecklenburg County filed a motion for confirmation of the sale of the Property to Belk.  The trial court entered judgment of confirmation of sale on December 6, 2018.  Thereafter, Belk received a commissioner's deed on December 14, 2018.[5]  Mecklenburg County filed a final report of sale on January 16, 2019, showing the Property sold for $407,925.00.  The final report also revealed that $21,728.02 was paid to Mecklenburg County for the 2014 through 2017 delinquent taxes.  Ad valorem taxes for 2018 were paid to Mecklenburg County in the amount of $5,308.50.

¶ 10        Upon receiving the deed to the Property, Belk served Ryan with a notice to vacate the Property via first class mail, certified mail, posting a notice on the front door of the Property, and by placing a copy of the notice in the mailbox on the Property.  On January 18, 2019, Belk filed an application for writ of possession of the Property.  The trial court entered an order for possession of the Property on January 24, 2019.

¶ 11        On February 4, 2019, at approximately 11:00 a.m., the Mecklenburg County Sheriff's Office went to the Property and forcibly removed Ryan from the Property. Ryan was confined to her wheelchair and was undressed when the deputies entered her home.  The deputies allowed her to grab a pair of pants that were too small for

---

[5] Belk's deed was recorded on December 20, 2018.

her and wheeled her onto the porch. Ryan attempted to explain to law enforcement officers that she had paid the outstanding taxes in full prior to the sale. Ryan was extremely upset and uncooperative as she was being forcibly removed from her home.

¶ 12 Ryan, through counsel, filed a motion to set aside the order and writ of possession on February 22, 2019. On April 9, 2019, the trial court denied Ryan's motion to set aside the order and writ for possession. In December 2019, Ryan moved to set aside the August 1, 2018 default judgment, or, in the alternative, the December 6, 2018 judgment of confirmation of the sale. Ryan also moved to strike the commissioner's deed.

¶ 13 On December 20, 2019, the trial court entered an order continuing the matter and joining Belk as a necessary party. On October 20, 2020, the trial court entered its written order in which it found that Mecklenburg County exercised due diligence under N.C. Gen. Stat. § 1A-1, Rule 4(j); Ryan had the right to rely on the Tax Collector's representative's oral statement as to the total amount of outstanding taxes; Ryan exercised her right of redemption; Belk was a good faith purchaser; and that Ryan was entitled to restitution.[6] Thereafter, the trial court granted Ryan's motion to set aside the December 6, 2018 judgment of confirmation of the sale but did

[6] The trial court further dismissed Belk as a party "[b]ecause the Belk's interest in the Property cannot be affected by these proceedings." Belk did not file any motion to be included as a party in these proceedings, nor did Belk file a notice of appeal.

not set aside the commissioner's deed transferring title of the Property to Belk. Mecklenburg County timely filed its written notice of appeal on November 17, 2020. Ryan timely filed her written notice of cross-appeal on November 24, 2020.

## II. Discussion

¶ 14 The parties raise several arguments on appeal, each will be addressed in turn.

### A. Appellate Jurisdiction

¶ 15 As a preliminary matter, we note that this appeal is interlocutory, as the matter of restitution is still pending before the trial court. "As a matter of course, our Court does not review interlocutory orders." *R.C. Koonts & Sons, Inc. v. First Nat'l Bank*, 266 N.C. App. 76, 79-80, 830 S.E.2d 690, 693 (2019) (citation omitted). "If, however, the trial court's decision deprives the appellant of a substantial right which would be lost absent immediate review, we may review the appeal under N.C. Gen. Stat. §§ 1-277(a) and 7A-27(d)(1)." *Id.* at 80, 830 S.E.2d at 693 (citation omitted). Appealing parties have the burden to demonstrate appropriate grounds for this Court's acceptance of an interlocutory appeal. *See Jeffreys v. Raleigh Oaks Joint Venture,* 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994) (citation omitted). Here, neither party brings forth an argument as to how this appeal affects a substantial right.

¶ 16 However, during oral arguments, Ryan's appellate counsel requested this Court to view the pleadings as a petition for writ of certiorari. In our discretion, we

allow the petition for writ of certiorari to reach the merits of this appeal.

## B. Ryan's Arguments on Appeal

### 1. *Due Diligence/ Motion to Set Aside Default Judgment*

¶ 17    Ryan first argues that the trial court erred by denying her motion to set aside both the entry of default and the default judgment because "[Mecklenburg] County failed to exercise due diligence as required under Rule 4," rendering the judgment void. Ryan moved under N.C. Gen. Stat. § 105-377 to set aside the judgment; however, the trial court considered Ryan's motion under N.C. R. Civ. P. 60. "The decision of whether to set aside an entry of default . . . is 'within the sound discretion of the trial court.'" *Swan Beach Corolla, L.L.C. v. County of Currituck*, 255 N.C. App. 837, 841, 805 S.E.2d 743, 746 (2017) (bracket omitted) (quoting *Auto. Equip. Distribs., Inc. v. Petroleum Equip. & Serv., Inc.*, 87 N.C. App. 606, 608, 361 S.E.2d 895, 896 (1997) (citation omitted)). Likewise, our "standard of review of a trial court's denial of a Rule 60(b) motion is abuse of discretion." *Davis v. Davis*, 360 N.C. 518, 523, 631 S.E.2d 114, 118 (2006) (citing *Sink v. Easter*, 288 N.C. 183, 198, 217 S.E.2d 532, 541 (1975)).

¶ 18    "A default judgment may be set aside under Rule 60(b)(6) only upon a showing that: (1) extraordinary circumstances were responsible for the failure to appear, and (2) justice demands that relief." *Advanced Wall Systems, Inc. v. Highlande Builders, LLC*, 167 N.C. App. 630, 634, 605 S.E.2d 728, 731 (2004). A trial court may also "set

aside and relieve a defendant from a default judgment if the judgment entered is void." *Dowd v. Johnson*, 235 N.C. App. 6, 9, 760 S.E.2d 79, 82 (2014).

> A defect in service of process by publication is jurisdictional, rendering any judgment or order obtained thereby void. If a default judgment is void due to a defect in service of process, the trial court abuses its discretion if it does not grant a defendant's motion to set aside entry of default.

*Jones v. Wallis*, 211 N.C. App. 353, 356, 712 S.E.2d 180, 183 (2011) (citation omitted) (cleaned up).

¶ 19        The North Carolina Rules of Civil Procedure allows "service of process by publication on a party that cannot, through due diligence, be otherwise served." *Dowd*, 235 N.C. App. at 9, 760 S.E.2d at 83 (citing *Cotton v. Jones*, 160 N.C. App. 701, 703, 586 S.E.2d 806, 808 (2003)). "In determining whether service of process by publication is proper, this Court first examines whether the defendant was actually subject to service by publication . . . ." *Id.* at 10, 760 S.E.2d at 83 (citing *Jones*, 211 N.C. App. at 357, 712 S.E.2d at 183). "Due diligence dictates that plaintiff use all resources reasonably available to her in attempting to locate defendants. Where the information required for proper service of process is within plaintiff's knowledge or, with due diligence, can be ascertained, service of process by publication is not proper." *Fountain v. Patrick*, 44 N.C. App. 584, 587, 261 S.E.2d 514, 516 (1980) (citing N.C. Gen. Stat. § 1A-1, Rule 4(j)(9)(c) (1977); *Thomas v. Thomas*, 43 N.C. App. 638, 260

S.E.2d 163 (1979)); *see also Jones*, 211 N.C. App. at 358, 712 S.E.2d at 183 (citation omitted); *Watagua County v. Beal*, 255 N.C. App. 849, 852, 806 S.E.2d 338, 340 (2017) (citations omitted).

¶ 20 There is "no restrictive mandatory checklist for what constitutes due diligence for purposes of service of process by publication . . . ." *Watagua County*, 255 N.C. App. at 852-53, 806 S.E.2d at 340-41 (citation and internal quotation marks omitted). However, a party must use all reasonably available resources to accomplish service of process. *See* N.C. R. Civ. P. 4(j); *see also Fountain*, 44 N.C. App. at 587, 261 S.E.2d at 516 (citations omitted).

¶ 21 Ryan relies on *In Re Foreclosure of Ackah*, 255 N.C. App. 284, 804 S.E.2d 794 (2017), *aff'd per curiam*, 370 N.C. 594, 811 S.E.2d 143 (2018), to argue that Mecklenburg County failed to exercise due diligence in service of process because it did not attempt to serve her via email. In *Ackah*, the homeowner, Ms. Ackah, leased her home while she traveled to Africa. *Id*. at 286, 804 S.E.2d at 796. While Ms. Ackah was in Africa, her homeowners' association ("HOA") attached a lien to her property because of her failure to pay dues. *Id*. The HOA sent certified letters to her residence to inform her of the delinquency prior to commencing foreclosure proceedings against her. *Id*. Thereafter, the HOA sent certified letters addressed to Ms. Ackah at her relatives' residences notifying her of the hearing before the Clerk of Court. *Id*. When those letters were returned "unclaimed," the HOA posted a notice on the door of the

residence. *Id.* "Although the HOA had an email address for Ms. Ackah, the HOA did not notify Ms. Ackah by email of the proceeding to enforce its lien." *Id.* On appeal, this Court found the HOA did not exercise due diligence under N.C. R. Civ. P. 4 because "[w]hen the notice letters came back 'unclaimed' Rule 4 due diligence required that the HOA at least attempt to notify Ms. Ackah directly through the email address it had for her rather than simply resorting to posting a notice on the [p]roperty." *Id.* at 287, 804 S.E.2d at 796. We find Ryan's argument persuasive and supporting precedent binding.

¶ 22        Here, the trial court found that Mecklenburg County exercised due diligence to both inform Ryan of the delinquency and of the subsequent foreclosure. However, it is undisputed that the Mecklenburg County Tax Office had Ryan's email on file. Indeed, the trial court's finding that Mecklenburg County had prior notice of a need to email Ryan due to her disabilities remains unchallenged by Mecklenburg County on appeal. Accordingly, this finding of fact is binding on appeal. *See Matter of Frucella*, 261 N.C. App. 632, 635, 821 S.E.2d 249, 251 (2018) ("Unchallenged findings of fact are presumed correct and binding on appeal." (citation omitted)); *In re Schiphof*, 192 N.C. App. 696, 700, 666 S.E.2d 497, 500 (2008). Further, when Kania Law Firm staff members reached out to the County Tax Office, the Tax Office was able to provide Ryan's email address. The record reveals that Ryan informed Mecklenburg County that she was wheelchair bound and legally blind and that the

best way to contact her was via email. However, although it had Ryan's email address, Mecklenburg County did not attempt to contact Ryan via email. Accordingly, we hold that Mecklenburg County's service under Rule 4 was insufficient, and the trial court erred by ruling otherwise.

### 2. *Motion to Set Aside Commissioner's Deed*

Ryan contends the trial court erred in failing to set aside the commissioner's deed to Belk because Belk was not a good faith purchaser. We disagree.

N.C. Gen. Stat. § 1-108 provides,

> If a judgment is set aside pursuant to Rule 60(b) or (c) of the Rules of Civil Procedure and the judgment or any part thereof has been collected or otherwise enforced, such restitution may be compelled as the court directs. Title to property sold under such judgment to a *purchaser in good faith* is not thereby affected.

N.C. Gen. Stat. § 1-108 (2020) (emphasis added). The trial court did not set aside the judgment of confirmation of the sale of the Property to Belk because it found that Belk was a good faith purchaser. Our Supreme Court recently addressed the issue of good faith purchasers in *In re Foreclosure of George*, 377 N.C. 129, 2021-NCSC-35.

In *George*, the George family owned a house in Charlotte, North Carolina, but resided in St. Croix, United States Virgin Islands. *Id.* at ¶ 2-3. The homeowners' association ("HOA") for the Charlotte property attached a lien to the house for unpaid HOA dues in the amount of $204.75. *Id.* at ¶ 4. Although the HOA attempted to

inform the Georges that it would proceed with foreclosure proceedings if the dues remained outstanding, the Georges did not make any payments. *Id.* The HOA was unable to effectuate service of process but proceeded to foreclose on the property in December 2016. *Id.* at ¶ 5-7. The Georges subsequently filed a civil suit, arguing the foreclosure sale was null and void due to insufficient service of process and a lack of notice of the foreclosure proceeding. *Id.* at ¶ 9. The trial court granted relief, but the purchasers of the Charlotte home filed a Rule 60(b) motion, asserting that they were good faith purchaser for value. *Id.* at ¶ 11-12. Upon consideration of their Rule 60(b) motion, the trial court found that the purchasers were not good faith purchasers and denied their motion. *Id.* at ¶ 12. On appeal, this Court "expressed agreement with the trial court's determination that the trustee had failed to properly serve the notice of foreclosure as required by . . . Rule 4." *Id.* at ¶ 13. However, this Court vacated the trial court's order, concluding that the purchasers were good faith purchasers. *Id.* at ¶ 16.

¶ 26        Our Supreme Court reversed, however, finding that the trial court had not abused its discretion in concluding the purchasers were not good faith purchasers. *Id.* at ¶ 32. In so doing, the court noted,

> A purchaser in good faith or an innocent purchaser is a person who purchases without notice, actual or constructive, of any infirmity, and pays valuable consideration and acts in good faith. An innocent purchaser lacks notice of any infirmity or defect in the

underlying sale when (a) he has no actual knowledge of the defects; (b) he is not on reasonable notice from the recorded instruments; and (c) the defects are not such that a person attending the sale exercising reasonable care would have been aware of the defects.

*Id.* at ¶ 24 (cleaned up).

¶ 27        Here, the trial court made a conclusion of law that "Belk's status as a good faith purchaser is determined as of the time he made his bid and obligated himself to purchase the Property, and not as of the time he accepted the deed." While it is true that the record is devoid of evidence that Belk knew of a defect in the foreclosure sale at the time he made the final upset bid, it is also true that Belk had knowledge of Ryan's claim that the outstanding taxes had been paid prior to accepting the commissioner's deed.

¶ 28        Indeed, the record indicates that Belk went to the Property, stood outside the door, and informed Ryan that he was the purchaser. Specifically, the trial court found in fact number twenty-one, "Ryan informed Belk of the paid property taxes when Belk came to the property after making the bid." "The bid is but a proposition to buy, and, until accepted and sanctioned by the court, confers no right whatsoever upon the purchaser." *Beaufort Cnty. v. Bishop*, 216 N.C. 211, 4 S.E.2d 252, 527 (1939) (quotation marks and citation omitted). We decline to hold, however, that Belk was not permitted to rely on Mecklenburg County's assertion that the Property was to be sold due to the outstanding taxes. Belk reasonably relied on the County's assertion

and the certificate of taxes due when he purchased the Property. *See Matter of George*, at ¶ 24 (recognizing that a purchaser is a good faith purchaser if "the defects are not such that a person attending the sale exercising reasonable care would have been aware of the defects" (brackets omitted)); *see also Miller v. Lemon Tree Inn*, Inc., 39 N.C. App. 133, 141, 249 S.E.2d 836, 841 (1978). Accordingly, we hold the trial court did not err by concluding that Belk was a good faith purchaser.

## C. Mecklenburg County's Arguments on Appeal

### 1. *Right of Redemption*

Mecklenburg County first argues the trial court erred by including in both its findings of fact and conclusions of law that Ryan exercised her right of redemption.

"It is well settled in this jurisdiction that when the trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts." *Elliot v. Muehlbach*, 173 N.C. App. 709, 711, 620 S.E.2d 266, 269 (2005) (citations omitted); *see also Hilliard v. Hilliard*, 146 N.C. App. 709, 711, 554 S.E.2d 374, 376 (2001) (citations omitted).

> While in a mortgage or deed of trust to secure a debt the legal title to the mortgaged premises passes to the mortgagee or trustee, as the case may be, the mortgagor or trustor is looked upon as the equitable owner of the land- with the right to redeem at any time prior to foreclosure. This right, after the maturity of the debt, is designated "his equity of redemption."

*Riddick v. Davis*, 220 N.C. 120, 125, 16 S.E.2d 662, 666 (1941). Put more plainly, "[t]he right of redemption may arise in any typical foreclosure proceeding; it is a statutorily created right to terminate a power of sale." *Lynn v. Federal Nat. Mortg. Ass'n*, 235 N.C. App. 77, 82, 760 S.E.2d 372, 376 (2014) (citation omitted).

¶ 31        An owner of real property

> has the right to redeem his land from the lien of unpaid taxes by paying the taxes with accrued interest, penalties and costs, and the court costs at any time before the entry of a valid judgment in a tax foreclosure action confirming the judicial sale of the land for the satisfaction of the lien.

*Chappell v. Stallings*, 237 N.C. 213, 216, 74 S.E.2d 624, 627 (1953).

¶ 32        Where a debtor deposits "sufficient money to redeem and for the purpose of redeeming the land from the tax lien" and the foreclosure sale "ha[s] not then been confirmed," the debtor should be "permitted to redeem the land." *Bishop*, 216 N.C. at 215, 4 S.E.2d at 527; *see also Beck v. Meroney*, 135 N.C. 532, 534, 47 S.E. 613, 613 (1904).

¶ 33        Here, the trial court found that Ryan called the Mecklenburg County Tax Office, inquired about the amount owed, and made a payment of $21,438.25. This amount was deducted from Ryan's bank account on September 14, 2018. It is undisputed that Ryan made this payment after being told by an authorized representative of the Mecklenburg County Tax Office that the outstanding balance was $21,438.25. We are not persuaded by Mecklenburg County's assertion that,

because Ryan's payment was refunded to her, she did not redeem the property. Put plainly, Ryan called the lienholder, inquired as to the debt owed, and paid the outstanding debt four days prior to the foreclosure sale. Ryan and the Deputy Tax Director both submitted affidavits averring that Ryan made a payment for the outstanding taxes prior to the foreclosure sale. Thus, there was competent evidence to support the trial court's finding of fact that Ryan redeemed the property.

¶ 34      Moreover, Ryan's payment exceeded the amount due Mecklenburg County under the terms of the default judgment and was more than the amount listed on Mecklenburg County's certificate of taxes due. Accordingly, we hold the trial court did not err in either finding as fact or concluding as a matter of law that Ryan exercised her right of redemption to the property.

### 2. *Reliance on Tax Collector's Oral Statement*

¶ 35      Mecklenburg County further contends that the trial court erred by including in its conclusions of law that "Ryan had the right to rely on the Mecklenburg County Office of the Tax Collector's Representative's Statement as to the amount due." We disagree.

¶ 36      N.C. Gen. Stat. § 105-361 provides the statutory framework for an individual to inquire as to any outstanding taxes. *See* N.C. Gen. Stat. § 105-361(a) (2020). Under subsection (a), the county tax collector must give a written certificate stating the amount of any taxes and special assessments due upon the request of an owner

of real property.  N.C. Gen. Stat. § 105-361(a)(1).  The owner of real property is then permitted to rely on the certificate issued, and "all taxes . . . that have accrued against the property for the period covered by the certificate shall cease to be a lien against the property" upon the payment of "the amount of taxes and assessments stated therein to be a lien on the real property."  N.C. Gen. Stat. § 105-361(b)(1).

¶ 37        Subsection (d) of Section 105-361 provides that "[a]n oral statement made by the tax collector as to the amount of taxes, special assessments, penalties, interest, and costs due on any real or personal property shall bind neither the tax collector nor the taxing unit."  N.C. Gen. Stat. § 105-361(d).

¶ 38        Here, however, Mecklenburg County did not argue before the trial court that Ryan was not permitted to rely on the oral statements of the tax collector's authorized representative.  It is well settled in our State that "the law does not permit parties to swap horses between courts in order to get a better mount . . . ."  *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934); *see also Burton v. Williams*, 202 N.C. App. 81, 88, 689 S.E.2d 174, 179 (2010) (citations omitted).  This "mean[s], of course, that a contention not raised and argued in the trial court may not be raised and argued for the first time in the appellate court."  *Burton*, 202 N.C. App. at 88, 689 S.E.2d at 179 (citation omitted).

¶ 39        Conceding this point was not raised before the trial court, Mecklenburg County asks this Court in its reply brief to exercise N.C. R. App. P. 2 to reach the merits of

this argument. Rule 2 of our rules of appellate procedure permits this Court to suspend the rules "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest." N.C. R. App. P. 2. The invocation of Rule 2 is discretionary and should only be done so cautiously and in "exceptional circumstances." *See Dogwood Dev. & Mgmt. Co., LLC. V. White Oak Transp. Co. Inc.*, 362 N.C. 191, 196-97, 657 S.E.2d 361, 364-65 (2008) (citations omitted). After careful review of the record, we discern no "exceptional circumstance" or "manifest injustice," and Mecklenburg County does not point to one that would occur by declining to invoke Rule 2.

**D. Restitution**

Next, Mecklenburg County argues the trial court erred by concluding Ryan is entitled to restitution under N.C. Gen. Stat. § 1-108. We disagree.

As discussed *supra,* N.C. Gen. Stat. § 1-108 provides, "[i]f a judgment is set aside pursuant to Rule 60(b) or (c) of the Rules of Civil Procedure and the judgment or any part thereof has been collected or otherwise enforced, such restitution may be compelled as the court directs." N.C. Gen. Stat. § 1-108. While Ryan moved under N.C. Gen. Stat. § 105-377 to set aside the judgment as null and void for Mecklenburg County's failure to exercise due diligence under N.C. R. Civ. P. 4, the trial court concluded "that the motion is in the nature of a Rule 60 motion, such that N.C. Gen. Stat. § 1-108 does apply."

¶ 42      A review of Ryan's motion reveals that she sought to have the judgments in question declared null and void for insufficient service of process. N.C. R. Civ. P. 60(b) permits relief from judgments where the judgments are void. N.C. Gen. Stat. § 1A-1, Rule 60(b). Accordingly, we are not persuaded by Mecklenburg County's assertion that, because the trial court did not specify which subsection of Rule 60 it was relying on in granting Ryan restitution, it was error for the trial court to award such relief. Moreover, where Ryan properly redeemed the Property that was subsequently sold at a foreclosure sale, she is entitled to seek restitution. Therefore, we hold the trial court did not err in concluding Ryan was entitled to restitution.

### III.      Conclusion

¶ 43      After careful review of the record and applicable law, we hold the trial court erred by finding that Mecklenburg County exercised due diligence in serving Ryan under N.C. R. Civ. P. 4(j). Therefore, we reverse the order of the trial court as proper service of this action was not perfected upon Ryan. We further hold the trial court did not err in concluding Belk was a good faith purchaser or by concluding that Ryan was entitled to restitution. Accordingly, we reverse the order of the trial court in part, affirm in part, and remand for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Judge DIETZ concurs.

Judge MUPRHY concurs in the result only.